**UNITED STATES of America**

v.

**Derane O'Neil GODFREY.**

**No. CR–84–AR–104–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

Dec. 23, 1986.
On Motion to Set Aside Jan. 23, 1987.

Frank W. Donaldson, U.S. Atty., Bill L. Barnett, Asst. U.S. Atty., Birmingham, Ala., Craig Shaffer and Barbara Kammerman, U.S. Dept. of Justice, Washington, D.C., for U.S.

J. Harry Blalock, Birmingham, Ala., for Godfrey.

## MEMORANDUM OPINION

ACKER, District Judge.

This court is faced with a difficult but intriguing problem upon which there is an absence of authority.

Derane O'Neil Godfrey entered a plea of guilty on August 18, 1986, pursuant to a written plea agreement invoking Rule 11(e)(1)(C), F.R.Cr.P., which provides for what is sometimes described as a "lock-and-key job" covering all aspects of a criminal case disposition. Such a plea bargain has generally been thought of as one presented in a form which the trial court must either totally accept or totally reject. See Rule 11(e)(3). Godfrey's particular agreement called for a custodial sentence of one year and one day. It also contained the classic paragraph by which Godfrey expressly acknowledged that no promises had been made by the United States other than those contained in the agreement itself. During the sentencing hearing Godfrey made it abundantly clear that he was tired of the agony and frustration occasioned by the long pendency of the criminal charges against him, that he desperately wanted to get the unpleasant episode behind him and that he was willing to pay his debt to society. The court accepted the agreement and made the requisite finding that a factual basis for the plea existed. Thereupon, the court imposed the agreed-upon custodial sentence of one year and one day.

It was obvious to the court on August 18, 1986, and it is obvious to the court today, that Godfrey was operating on the erroneous assumption that by receiving a sentence of one year and one day, as opposed to one year, he would be "eligible for parole" in four months. Until recently Godfrey was unaware of his "salient factor score" and of the "offense severity rating." Under the parole guidelines these items mandate that Godfrey serve the entire year and a day minus any "good time." In other words, unless the court intervenes, Godfrey, who could have settled for a year in custody inadvertently added a day to his sentence in the belief that by doing so he had a *chance* of obtaining eight months of freedom as a *quid pro quo* for the one day. As it has turned out, there was never any such chance. Whether or not while the plea negotiations were in progress the attorneys for the United States knew that there was no practical difference between a sentence of one year and a sentence of one year and one day, it is undisputed that the one day difference was a matter of discussion. This, of course, means that some real significance attached to the one day.

After serving over three months in custody, Godfrey learned the truth, namely, that there is no real prospect for an early release unless pursuant to Rule 35(b), F.R. Cr.P. At about the same time, Godfrey learned that one of his alleged co-conspirators, who actually went to trial, was granted a post-conviction judgment of acquittal based upon this court's conclusion that the United States failed to prove an essential element of the crime. *United States v. Creekmore*, 648 F.Supp. 1369 (N.D.Ala. 1986), presently on appeal to the Eleventh Circuit.

Godfrey thereupon filed a *pro se* motion pursuant to Rule 35(b), seeking a reduction in his sentence. During an evidentiary hearing on Godfrey's motion, the United States took the position that Godfrey's plea agreement under Rule 11(e)(1)(C) precludes his filing of a Rule 35(b) motion and that this court lacks jurisdiction to entertain such a motion. The United States contends that Godfrey's only option is a motion under 28 U.S.C. § 2255 attacking the plea agreement itself as having been induced by a misrepresentation or a mistake of fact. The United States denies that there was any mistake or misrepresentation. Godfrey carefully refuses to ask this court to set aside the plea agreement, knowing that if he should be successful in such a request he would be subject to a trial on the merits, an eventuality which he devoutly wishes to avoid, particularly after he has already been in custody nearly the four months he anticipated, and does not want to expose himself to the possibility of receiving a maximum sentence after a traumatic trial.

Neither the United States nor Godfrey brought to the court's attention *United States v. McDowell Contractors, Inc.*, 668 F.2d 256 (6th Cir.1982), in which the Sixth Circuit debated the precise issue here presented, found both sides "not unpersuasive," but then declined to decide the issue because the issue had not been properly raised in the court below. The issue has been raised in this case by the United States, making it impossible for this court to dodge it.

The Sixth Circuit in *McDowell Contractors* acknowledged that Rule 11(e)(1)(C) and Rule 35(b) are not easy to reconcile. The concurring opinion of Judge Jones may suggest an implicit belief that Rule 35(b) overrides Rule 11(e)(1)(C) and gives a district court the authority, in effect, "to modify the plea agreement." Strictly speaking, however, none of the three judges on the Sixth Circuit panel in *McDowell Contractors* expressed an opinion on the question, even by *dictum*.

There are several rules of construction other than the extrinsic legislative history which may or may not assist in a reconciliation of these seemingly conflicting rules. The first is that Federal Rules of Criminal Procedure, like all statutes, are to be considered *in pari materia* or in juxtaposition. Secondly, rules are to be given their ordinary, grammatical meaning if possible. Thirdly, they shall be presumed not to contradict each other if a consistent interpretation is possible. Fourthly, penal statutes and rules are to be construed in favor of the criminally accused, and any ambiguity is to be resolved in his favor. Lastly, there is a presumption that the draftsmen do not intend an unjust or harsh or unreasonable consequence. Because the last amendments to Rule 11 and Rule 35 both became effective on the same date, namely, August 1, 1985, the presumption that a subsequent enactment overrides a conflicting prior enactment is not applicable here.

If the words of Rule 11(e)(1)(C) are construed to reflect an intent to bind both the United States and the defendant as a matter of contract hammered out by the parties upon its formal acceptance by the court, then logically there is no room for an alteration or lessening of the penalty thus contractually provided. Put another way, how can the court be a third-party signatory to a contract and thereafter relieve one of the other parties of its binding effect? As recognized by the Sixth Circuit in *McDowell Contractors*, this argument is "not unpersuasive." Yet, Rule 35(b) itself contains no language which can be con-

strued to curtail the broad discretion of the trial court to reduce a sentence. Therefore, Godfrey's argument is "not unpersuasive." The Notes of Advisory Committee under Rule 35(b) contain the following comment:

> The change facilitates the underlying objective of rule 35, which is to "give *every* convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim." *United States v. Ellenbogan*, 390 F.2d 537, 543 (2d Cir. 1968).

(emphasis supplied).

This quotation from the Second Circuit would indicate that the commentators see no exception in Rule 35(b) for a convicted defendant who purportedly contracted for a particular, fixed disposition under Rule 11(e)(1)(C).

Rule 11(e)(1)(C) provides that "upon the entering of a plea of guilty ... the attorney for the government will ... agree that a specific sentence is the *appropriate* disposition of the case." (emphasis supplied). The word "appropriate" makes this sentence susceptible to the interpretation that such a plea agreement is less than "hard and fast" and permanent and inalterable. What the parties agree is *"appropriate"* today may become *"inappropriate"* tomorrow. Although it would have been a simple matter to state the intent unequivocally, the language of Rule 11 conspicuously does *not* unequivocally say:

> The attorney for the government and the attorney for the defendant may agree upon a specific disposition of the case and enter into a final and binding written agreement to that effect, subject to the approval of the court.

The Notes of Advisory Committee as to Rule 11(e)(3) state:

> Subdivision (e)(3) makes it mandatory, if the court decides to accept the plea agreement, that it inform the defendant that it will embody in the judgment and

sentence the disposition provided in the plea agreement, or *one more favorable to the defendant.*

(emphasis supplied).

If the commentators are here correct, and if the court maintains the right to accept a written plea agreement which provides for the "appropriate disposition" while simultaneously imposing a sentence "more favorable to the defendant," a Rule 11(e)(1)(C) agreement certainly cannot be considered to have all of the properties of a contract.

One other idea influences this court as it seeks to ascertain the meaning of present Rule 35(b). The new Rule 35 which will become effective on November 1, 1987, does not permit a "reduction of sentence" by a simple exercise of the trial court's discretion. The Congressional elimination of the language here under analysis is a strong indication that the Congress intended to effect a change or to "plug a loophole" by its latest enactment. A "loophole" must exist before it can be plugged. Whether or not present Rule 35(b) can be characterized as a "loophole," it does now provide a vehicle for sentence reduction, whereas that vehicle will disappear on November 1, 1987.

If on August 18, 1986, this court had not shared the defendant's belief that he would be eligible for parole after four months, this court would either have rejected the plea bargain or would have availed itself of the option suggested by the commentators, namely, imposing a sentence "more favorable to the defendant."

■ The United States not only argues that this court has no jurisdiction to entertain Godfrey's Rule 35(b) motion but that this court cannot even consider the possibility that there was a misunderstanding by the defendant during the plea negotiations in light of his express disclaimer, and that the court cannot consider and compare the subsequent disposition in *United States v. Creekmore.* This court believes that under Rule 35(b) the court can decide for itself what it deems relevant to the inquiry and, in fact, that the court has no obligation to

articulate its reasons for denying or for granting a Rule 35(b) motion.

It is obvious that the court cannot rule on a motion if it has no jurisdiction. The court decides under the circumstances of this case that it does have jurisdiction. It is motivated to reduce Godfrey's sentence, not by any mistake which may have occurred on August 18, 1986, and not by any disparity in treatment as between alleged co-conspirators, but by the following forthright expression from the Probation Officer's recommendation in the pre-sentence report furnished to the court just prior to its acceptance of the plea agreement on August 18, 1986:

A plea agreement in this case calls upon the court to sentence Mr. Godfrey to custody for one year and one day. Should the court be inclined to incarcerate the subject, I have no objection. However, the fact that Mr. Godfrey has no other prior record and the fact that he has been in no further trouble since the incident for which he is charged, appear to mitigate against locking him up.

Should he be incarcerated, Mr. Godfrey could possibly be the target of racially inspired retaliation. The possibility of such retaliation might be less in a camp setting.

If he is placed on probation, it is anticipated that Mr. Godfrey will be seen on a relatively infrequent basis.

In an exercise of its discretion under Rule 35(b), the court will by separate order reduce Godfrey's sentence of one year and one day to four months.

## ON MOTION TO SET ASIDE

The court has under consideration the motion of the United States to set aside the order entered on December 23, 1986, reducing Derane O'Neil Godfrey's sentence. The court has carefully studied the briefs submitted by the parties in support of and in opposition to this motion.

When Godfrey's *pro se* motion under Rule 35 came on for hearing on December 17, 1986, the United States appeared, presented and cross-examined witnesses but could not cite a single case in support of its position that this court lacked any authority to reduce Godfrey's sentence on the ground that a plea agreement under Rule 11(e)(1)(C) is inviolate and is not subject to any subsequent modification whatsoever under Rule 35. The court cannot understand the United States' lack of preparedness when it was on notice of this obviously paramount question, but the court can readily understand why Godfrey's counsel, who was only appointed thirty minutes before the hearing, could not refer to any authority on the subject. Now, after receiving the adverse ruling on December 23, the United States for the first time presents several cases which it says support its position. However, upon analysis, the court finds that none of the cases cited by the United States deals squarely or persuasively with the issue which the court faced on December 17, and the issue it is now asked to face again.

Perhaps the most obvious distinction between the instant case and the cases cited by the United States is the fact that in this case when the court on August 18, 1986, approved the plea bargain agreement it was operating under a misperception or misapprehension of Godfrey's eligibility date for parole consideration. In *United States v. Dunn*, 585 F.Supp. 1365 (N.D.Ill. 1984), now cited by the United States, Judge Shadur was not asked to take another look at a sentence imposed under Rule 11(e)(1)(C). Nevertheless, he enunciated the following principle:

Rule 35 motions, like motions to reconsider judgment orders in civil cases, should not simply assert the same arguments made and found wanting at the original sentencing (or at the time of the original civil order). They should rather deal either with *matters wholly misperceived by the Court the first time around* (not in the sense of merely an assertedly mistaken decision, but in the sense of a decision that had really misunderstood what the issues before the Court were), *or with unforeseen devel-*

*opments occurring since the original decision was reached.*

585 F.Supp. at 1366 (emphasis supplied).

This court should perhaps apologize to the United States for having thought on August 18 that the change contained in the second version of the plea bargain which increased the custodial sentence from one year to one year and one day *had significance,* namely, that it created the possibility of a consideration for parole after four months. The attorneys for the United States do not seem to argue that there was no possibility of any misperception on this issue. Rather, they seem to regret any possible misunderstanding, even though they woefully failed to satisfy this court either on December 17 at the Rule 35 hearing or by subsequent brief on motion for reconsideration as to why this court or Godfrey should have been able to make the technical, esoteric, semantic distinction which they make between "eligibility for parole" and "eligibility for *consideration* for parole." Frankly, the court believes that on August 18 the attorneys representing the United States were just as ignorant about the practical effect of the parole guidelines on Godfrey as this court was. Otherwise, the only conclusion the court could draw would be that the United States deliberately slipped up on Godfrey and on the court, and this court refuses to draw such an inference.

The only case cited by the United States dealing directly with the right of a trial judge to alter a Rule 11(e)(1)(C) "contract" by use of Rule 35 is *United States v. Goehl,* 605 F.Supp. 517 (N.D.Ill.1984), also decided by Judge Shadur, and cited as well by Godfrey in his reply brief. Although Judge Shadur did not discuss the language of Rules 11 and 35 *in pari materia* as this court attempted to do in its opinion of December 23, Judge Shadur did pointedly say:

Of course reduction of an agreed-on sentence may nonetheless be justified *if* post-sentencing developments, previously unforeseen and rendering the earlier

binding agreement inappropriate, were to occur.

605 F.Supp. at 519 (emphasis in original). This is hardly an expression that a contracted disposition can never be reexamined or changed. This court agrees with Judge Shadur and is particularly impressed by his use of the word "inappropriate." In Godfrey's case there are at least three unforeseen post-sentence developments which in this court's view "make the earlier binding agreement inappropriate" and, therefore which created a trial judge's right to reduce a sentence under Rule 35. The first unforeseen development in Godfrey's case has already been discussed, namely, the belated revelation that Godfrey's parole guidelines would preclude his eligibility for any parole consideration whatsoever during his entire period of incarceration. The second unforeseen development is that the statutory basis for Godfrey's conviction was later found wanting by a judgment of acquittal entered in favor of one of his alleged co-conspirators. *United States v. Creekmore,* 648 F.Supp. 1369 (N.D.Ala. 1986). Another development unforeseen on August 18 is the fact that the Creekmore jury only found Creekmore guilty of a misdemeanor. In other words, the Government's case, even ignoring its shortcomings in establishing a statutory basis for the crime, was not as jury strong as it thought. On July 31, 1986, when the United States was trying to convince the court to accept the first version of a proposed plea agreement (which would have allowed Godfrey after serving a part or all of his sentence to ask for a withdrawal of his plea in the event the court should later hold that the SCLC parade was not administered by the City of Decatur), its attorneys argued:

... the intent of that section of the agreement is to allow Mr. Godfrey to come back to you and to say, "It is not right for me to plead guilty to a crime which is not a crime."

While this court may or may not agree with the United States that "it is not right to accept a plea of guilty for a crime which is not a crime," Godfrey was apparently

willing to do just that when he received, in exchange for pleading guilty to a crime which he and his lawyer thought was probably not a crime, an increase in his custodial time from one year to one year and one day *for a reason.* Is the United States arguing that the subsequent ruling in the Creekmore case that the SCLC parade was not, in fact or in law, "administered by" the City of Decatur was so foreseeable that all of the parties to the August 18 plea agreement should have anticipated it as a foregone conclusion? The truth is that several of the pieces of evidence outlined by the United States at Godfrey's sentencing hearing were never offered by the United States during the Creekmore trial. Be that as it may, Godfrey purported to give up a *viable* legal point in exchange for a *potentially* earlier release date. The *potential* simply was not there. No other explanation exists for the last minute amendment to the plea bargain.

The United States also makes the point that this court in its opinion of December 23 relied only upon the pre-sentence report available to it at the sentencing hearing on August 18 and did not refer to any subsequent information from the Probation Service. Although not mentioned in the opinion of December 23, it is a fact that just prior to the December 23 opinion Godfrey's probation officer commented to the court that he had no objection to a reduction of Godfrey's sentence to the time then served. If the court had followed this suggestion, Godfrey would have been home for Christmas. Instead, the court required Godfrey to serve a full four months. Attached hereto as Exhibit "A" is an updated probation report requested by the court. This certainly constitutes "further information" in the terms of *Goehl* and was received by the court subsequent to the sentencing. It is no more than what was orally communicated prior to December 23. The court also received very important "further information" by seeing and hearing Godfrey on the witness stand under oath on December 17. Nothing can be more helpful than seeing and hearing a person as a basis for evaluating his current attitude and adjustment.

The court did not examine Godfrey at the sentencing hearing on August 18, because the contractual nature of the sentencing agreement only required the court to make sure that Godfrey understood the agreement. In this effort the court failed, because the court did not understand the full import of the agreement any better than Godfrey did.

The United States in its motion for reconsideration also cites to the court *United States v. Moon,* an unpublished opinion, Appeal No. 86–7219 (11th Cir., June 6, 1986). As the United States well knows, unpublished opinions are not intended to have precedential effect. Nevertheless, this court has read the *Moon* opinion and finds it not helpful, that is, unless the United States intends to imply that by reducing Godfrey's sentence this court was reacting to the prison officials' failure to follow the court's recommendation as to the type of custodial setting for Godfrey. If this is the implication, the court gives the United States an A+ for subtlety but finds the implication contrary to the facts. This court neither purported to usurp the prerogatives of the Parole Commission nor tried to tell anybody how to apply parole guidelines. This court fully understood that its recommendation of a camp type setting was no more than a suggestion. The pertinent fact is that on August 18 this court was ignorant of the guidelines as they affected Godfrey. This court is not upset with anybody except perhaps itself. This court is not interested in teaching anybody a lesson and may have itself learned a lesson.

On December 23, this court was trying to do what was reasonable and fair under a unique set of circumstances. If what this court did was outside the range of this court's jurisdiction or discretion, this court stands ready to follow the mandate of the highest reviewing court which so holds, including, if necessary, entering an order requiring Godfrey to return to prison in order to serve the balance of the custodial sentence which the United States says he must serve. If this should happen, the

court believes that Godfrey would be a good candidate for voluntary surrender.

For these reasons, the United States' motion for reconsideration will be denied.

EXHIBIT A

**UNITED STATES GOVERNMENT**
# memorandum

**DATE:** January 16, 1987

**REPLY TO ATTN OF:** Gerald L. Duncan, Jr.
U.S. Probation Officer

**SUBJECT:** Derane O'Neil Godfrey
CR–84–AR–104–NE

**TO:** Hon. William M. Acker, Jr.
United States District Judge

I have been in touch with authorities at the Federal Prison Camp in Atlanta, Georgia, as you requested. I was told that Mr. Godfrey experienced no problems with regard to discipline while a resident of that facility. I was also asked to send a copy of the order for Godfrey's release, as they have to have said order in hand before they can complete their paperwork.

As noted in the Presentence Report, the subject has no known convictions, other than the present one in this court. He had a previous arrest in Montgomery (previous to the conviction, but after the incident charged) for Unlawful Assembly, a misdemeanor. There was no way to learn the disposition of that case, however, in the absence of records.

As I stated in the original report, I do not believe Mr. Godfrey represents a danger to the community at this time, based on the fact that he has maintained a clear record for the past 6+ years.