Burlington Northern Railroad Company ("Burlington") and R.H. Shalhoop appeal from a judgment awarding Joan Whitt $989,646.67 interest on a judgment entered on a jury verdict in favor of Whitt. We reverse and remand.
This is the second time this case has come before us. SeeBurlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala. 1990),cert. denied, ___ U.S. ___, 111 S.Ct. 1415, 113 L.Ed.2d 468
(1991). This suit was initiated by Burlington following a collision involving a Burlington train and a tractor-trailer truck driven by Joan Whitt's husband, who died in the accident. Burlington sued Joan Whitt, as administratrix of her husband's estate; and Ligon Nationwide, Inc. ("Ligon"), Mr. Whitt's employer, alleging that Mr. Whitt had caused damage to its train. Ligon counterclaimed against Burlington, alleging that Burlington had damaged its truck. Mrs. Whitt counterclaimed against Burlington and filed third-party claims against Shalhoop and other Burlington employees seeking damages for the death of her husband and for the loss of the truck that he was driving.
Prior to trial, Burlington accepted $50,000 as a settlement for its claims against Ligon In connection with the settlement, counsel for Burlington prepared a typewritten order for the trial court's signature dismissing Burlington's claims against Ligon. Due to an apparent oversight, however, the trial judge failed to sign and enter the order dismissing the claims.
On August 23, 1988, the claims of Mrs. Whitt against Burlington and Shalhoop were submitted to the jury, thus, leaving a number of claims, including those of Burlington against Ligon, outstanding. The jury returned a verdict in favor of Mrs. Whitt for $15,000,000. The trial judge, on August 23, 1988, entered an order awarding Mrs. Whitt $15,000,000 on the jury verdict. Burlington and Shalhoop appealed.
On December 7, 1989, this Court issued the following order to the circuit judge:
 "It appearing to the Court that the claims stated by Burlington Northern Railroad Company against Ligon Nationwide, Inc., have not been adjudicated, this cause is remanded to you for a determination as to whether to (1) make the interlocutory order of August 23, 1988, in favor of Joan Faye Whitt, as administratrix of the estate of William Charles Whitt, deceased, and against Burlington Northern Railroad Company and R.H. Shalhoop, a final judgment, pursuant to the provisions of Rule 54(b), Alabama Rules of Civil Procedure, or (2) adjudicate the remaining claims, thus making the interlocutory order of August 23, 1988, final and appealable.
 "If you elect to enter the 54(b) order, or any other final judgment, a supplemental record reflecting such action should be prepared and forwarded to this Court within ten (10) days from the date shown on this remand. The judgment will be considered final as of the date the new order is entered.
 "Failure to respond to this remand within ten (10) days will result in dismissal of the appeal as being from a non-final order."
On December 18, 1989, the trial court entered a "Final Judgment and Order," in which it stated, in pertinent part:
 "It appears that certain claims were not adjudicated final. Prior to the entry of the court's August 23, 1988, order, the court was aware that the claim and counterclaim of Burlington Northern Railroad Company and Ligon Nationwide, Inc., were settled by a $50,000 payment to Burlington Northern and that motions to dismiss other claims were filed but a written order of dismissal was never entered.
 "Wherefore, the court hereby orders that the following claims are adjudicated final and are hereby dismissed:
 "(1) All claims by Burlington Northern Railroad Company against Ligon Nationwide, Inc. *Page 221 
 "(2) All claims by Ligon Nationwide, Inc., against Burlington Northern Railroad Company.
 "(3) All claims by Burlington Northern Railroad Company against Joan Faye Whitt, Administratrix of the Estate of William Charles Whitt, deceased.
 "(4) All claims by Joan Faye Whitt, Administratrix of the Estate of William Charles Whitt, deceased, against R.J. Shields and L.B. Lane."
On September 21, 1990, this Court issued an opinion affirming the judgment of the trial court, conditioned on Mrs. Whitt's acceptance of a remittitur in the amount of $10,000,000. On April 10, 1991, following Mrs. Whitt's acceptance of the remittitur, Burlington and Shalhoop paid into the trial court $5,787,808.23, which purported to represent satisfaction of the $5,000,000 judgment plus 12% per annum simple interest on the judgment calculated from December 18, 1989, the date of the "Final Judgment and Order."
On April 16, 1991, Mrs. Whitt filed a "Petition for Declaration of Rights and Obligations," in which she sought payment of the $5,000,000 judgment together with interest calculated from August 23, 1988, the date of the first order based on the jury verdict, "at a rate of 12% per annum." On July 18, 1991, following a hearing on the petition, the trial court entered the following judgment:
 "The court finds that the interest on the Five Million and No/100 Dollars ($5,000,000.00) runs from the entry of judgment on the jury verdict dated August 23, 1988 — interest began to run at twelve percent (12%) per annum as of that date — and finds that the payment by the clerk of the monies paid into the court, specifically Five Million Seven Hundred Eighty Seven Thousand Eight Hundred Eight and 23/100 Dollars ($5,787,808.23) does not constitute the correct amount in satisfaction of the judgment.
 "It is, therefore, ordered, adjudged and decreed that the plaintiff, Joan Faye Whitt, have and recover of the defendants, Burlington Northern Railroad Company and R.H. Shalhoop, a sum equal to Nine Hundred Eighty Nine Thousand Six Hundred Forty-Six and 67/100 Dollars ($989,646.67), which represents the unpaid balance as of April 10, 1991, of Nine Hundred Fifty Eight Thousand Four Hundred Fifty-One and 77/100 Dollars ($958,451.77), bearing interest at 12% per annum, or Three Hundred Fifteen and 10/100 Dollars ($315.10) per diem, for which let execution issue."
(Emphasis added.) The trial court's figure represented the difference of $6,746,260.00 [$5,000,000.00 X 12% interestcompounded annually from August 23, 1988, until April 10, 1991] and $5,787,808.23, the amount Burlington and Shalhoop paid into court, [$6,746,260.00 — $5,787,808.23 = $958,451.77] plus $31,194.90, which equalled the amount of interest accrued on $958,451.77 at 12% from April 10, 1991, until July 18, 1991 [$315.10 X 99 days = $31,194.90].
Mrs. Whitt does not contend that Burlington's calculations incorrectly represent the amount of simple interest accrued from December 18, 1989, until April 10, 1991. Likewise, Burlington does not contend that the trial court's calculations incorrectly represent the amount of compound interest accrued from August 23, 1988, until July 18, 1991. The only issues presented for review are (1) whether Ala. Code 1975, § 8-8-10, permits the calculation of post-judgment interest from the date of an award based on a jury verdict where the order is entered without all claims having been adjudicated or does not comply with the requirements of Ala.R.Civ.P. 54(b) as to finality; and (2) whether § 8-8-10 authorizes an award of post-judgment interest computed on a compound basis.
 I. Date of Calculation
Section 8-8-10, in pertinent part, provides:
 "Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest *Page 222 at the rate of 12 percent per annum . . . from the day of entry."
(Emphasis added.) Burlington contends, in effect, that § 8-8-10
must be read in pari materia with Rules 58 and 54(b), A.R.Civ.P., and with Rule 37, A.R.App.P. We agree.
"Sections of the Code dealing with the same subject matter are in pari materia." Locke v. Wheat, 350 So.2d 451, 453
(Ala. 1977); Kelly v. State, 273 Ala. 240, 139 So.2d 326 (1962). This canon of construction also applies to rules of court.United States v. Godfrey, 651 F. Supp. 869, 871 (N.D.Ala. 1986) (construing Federal Rules of Criminal Procedure); Huskey v.W.B. Goodwyn Co., 295 Ala. 1, 321 So.2d 645 (1975) (construing Alabama Rules of Civil Procedure); 2B Sutherland Stat. Const. § 51.02 (5th ed. 1992). Ala. Code 1975, § 8-8-10; Ala.R.App.P. 37; and Ala.R.Civ.P. 54(b) and 58 all bear directly on the same subject matter, that is, the question when a judgment is properly and formally "entered." They must, therefore, be " 'resolved in favor of each other to form one harmonious plan.' " Ex parte Coffee County Comm'n, 583 So.2d 985, 988 (Ala. 1991) (quoting League of Women Voters v. Renfro, 292 Ala. 128, 131,290 So.2d 167, 169 (1974)).
Ala.R.App.P. 37 provides in pertinent part: "Unless otherwise provided by law, if a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment wasentered in the trial court." (Emphasis added.) As to when a judgment is deemed to be "entered," Ala.R.Civ.P. 58(c) provides:
 "Upon rendition of a judgment or order as provided in subdivision (a) of this rule, unless it contains a specific direction otherwise or is subject to the provisions of Rule 54(b), the clerk shall note such judgment or order forthwith in the civil docket if separately maintained. Notation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order."
(Emphasis added.) The committee comments to Rule 58(c) further explain that the clerk's "notation of the judgment is not to be delayed unless the judgment . . . is subject to Rule 54(b)." (Emphasis added.)
Ala.R.Civ.P. 54(b) states:
 "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."
(Emphasis added.)
For some time after the adoption of Rule 54(b), this Court dismissed ex mero motu appeals from judgments that failed to adjudicate all the claims in a suit involving multiple claims or parties unless the record revealed the trial court's (1) "express determination that there [was] no just reason for delay" and (2) its "express direction for the entry of judgment." Id. (Emphasis added.) Tubbs v. Brandon,366 So.2d 1119 (Ala. 1979); Cates v. Bush, 293 Ala. 535, 307 So.2d 6
(1975). Subsequently, we adopted the practice of remanding the cause to the trial court for a "determination as to whether it chooses to certify the order as final, pursuant to Rule 54(b), and, if it so chooses, to enter such an order and to supplement the record to reflect that certification." Foster v. Greer Sons, Inc., 446 So.2d 605, 609 (Ala. 1984). Under this practice, if the trial court subsequently enters a judgment adjudicating the outstanding claims, or certifies its interlocutory order as "final," by the clear and unequivocal language required by Rule 54(b), the "judgment will be taken as final as of the date the [Rule] 54(b) certification is entered." Foster,446 So.2d at 609. However, if the trial court fails to respond to our order within 10 days, the appeal must be dismissed.
We adopted this remand procedure only as a means to "advance the policy considerations underlying Rule 54(b) by speeding up the process of reaching the merits in a proper case."Foster, *Page 223 446 So.2d at 610. The procedure also "eliminates the inconvenience and cost of dismissing the appeal and then taking a new appeal after obtaining the Rule 54(b) certification." Foster,446 So.2d at 610. However, none of the procedures that this Court has adopted to facilitate the policies underlying Rule 54(b) should be construed as relaxing the Rule 58 requirements for the entry of a proper judgment, which, notably, are cast in terms of an express reference to the restrictions of Rule 54(b). On the contrary, these provisions, taken in conjunction with the cases construing them, compel the conclusion that if an order entered in a case with multiple claims "does not meet the requirements of Rule 54(b)," then "no formal 'judgment' . . . [has been] entered," Balboa Ins. Co. v. Sippial Electric Co.,379 So.2d 579 (Ala. 1980). Consequently, for the purpose of determining the "date the judgment was entered," which, under Rule 37, begins the period of accrual of post-judgment interest, an order that is subject to Rule 54(b) but does not comply with it must be regarded as a nullity.[1]
Similarly, a number of federal courts, construing the federal counterparts to these rules, have held that in cases involving claims comprehended by Fed.R.Civ.P. 54(b), post-judgment interest begins to accrue on the date of the entry of a judgment that complies with Rule 54(b), prior entries notwithstanding. See Hooks v. Washington Sheraton Corp.,642 F.2d 614, 617 (D.C. Cir. 1980) (order entered in noncompliance with Rule 54(b) was "not a valid judgment to which interest could attach"); Caputo v. United States Lines Co.,311 F.2d 413, 416 (2d Cir.) (order entered in noncompliance with Rule 54(b) was "premature" for purpose of computing post-judgment interest), cert. denied sub nom, Imparato Stevedoring Corp. v.U.S. Lines Co., 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055
(1963); Howell v. Sinclair Refining Co., 20 F.R.D. 623, 625
(N.D.Ala. 1957) (clerk's "authority" to enter a judgment in a case within the ambit of Rule 54(b) is "derived from the directive of Rule 58, which is expressly made 'subject to the provisions of Rule 54(b),' the terms of which are clear and self-explanatory").
The "judgment" entered on August 23, 1988, was determined by this Court to be defective as a matter of law. Because of the trial court's failure to adjudicate Burlington's claims against Ligon, or to comply with Rule 54(b), August 23, 1988, could not serve as the "date the judgment was entered" as contemplated by Rule 37 and by § 8-8-10. Instead, under our analysis of the statute and the pertinent rules, interest began to accrue on December 18, 1989, the date the trial court entered its "Final Judgment and Order."[2]
 II. Rate of Interest
Compound interest is defined as " 'interest upon interest where accrued interest is added to the principal sum, and the whole treated as a new principal for the calculation of the interest for the next period.' " Seals v. Morris,465 So.2d 140, 140 (La.Ct.App. 1985) (quoting Black's Law Dictionary). It is undisputed that the trial judge awarded compound interest on the judgment.
Section 8-8-10, which provides that "judgments shall bear interest at the rate of 12 percent per annum," is, as Mrs. Whitt correctly observes, facially neutral as to the method of computation. Indeed, " 'per annum' simply means 'by the year.' " Seals, 465 So.2d at 140 (quoting Black's Law Dictionary). Thus, the term "has no bearing upon the issue of whether legal interest should be compounded or not." Id. From this observation, however, her conclusion that the statute thusauthorizes compound interest does not follow. On the contrary, "[i]nterest on interest is not favored in the law and should not be awarded absent express legislative authority." Seals v.Morris, supra (emphasis added). *Page 224 
"This is in accord with the general American rule that when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of express authorization otherwise." Stovall v. Illinois Central Gulf R.R.,722 F.2d 190, 192 (5th Cir. 1984) (construing Mississippi statute authorizing "interest at the rate of eight percentum (8%) per annum" on "[a]ll other judgments and decrees," as contemplating only simple interest); see also Coggan v. Coggan, 183 So.2d 839
(Fla.Dist.Ct.App. 1966). Indeed, a 1985 jurisdictional statutory survey revealed that, as of the date of that writing, only "three states, Colorado, Kentucky and Michigan, award[ed] compound postjudgment interest." Note, The PostjudgmentInterest Rate in Pennsylvania: Ignoring Reality for Too Long, 23 Duq.L.Rev. 1082, 1087 (1985); see also id. at 1084 n. 9. Significantly, statutes in those states expressly authorize an award of compound post-judgment interest. Id. (citing Colo.Rev.Stat. § 5-12-102(4)(b) (Supp. 1984); Ky.Rev.Stat.Ann. §360.040 (Baldwin 1983); Mich. Comp.Laws.Ann. § 600.6013(4) West Supp. 1984-85)).
Besides the author of the law review note just cited, there are other commentators who advocate reform in this area. See, e.g., C. Wiggins, Two Proposals to Change the Calculation ofLegal Interest, Fla.B.J., April 1990, at 17, 19 ("Simple interest is an antiquated financial concept no longer applicable in 1990"). Advocates for interest reform often suggest that higher post-judgment interest rates would remove the "economic incentive . . . for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate during the pendency of the appeal." S.Rep. No. 275, 97th Cong., 2d Sess. 11, reprinted in 1982 U.S. Code Cong. Admin. News 11, 21 (legislative history of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25, which amended 28 U.S.C. § 1961 by tying post-judgment interest rates to the "coupon issue yield," § 1961(a), of United States Treasury bills). Some authorities, however, discount the effect of interest rates on the volume of appeals. See, e.g., T. Marvel, How Should We Set Interest Rates on Judgments ofAppeal?, 27 Judges J. 36, 38 n. 2 (Summer 1988). At any rate, the setting of interest rates is a matter within the discretion of the legislature.
In 1981, the Alabama legislature amended § 8-8-10 to raise the interest rate from 6% to the current rate of 12%. Act No. 81-1115, 1981 Ala. Acts 379. One year later, the legislature again changed the language of the section to except from the general provisions of the section judgments "based upon a contract action." Act No. 82-443, 1982 Ala. Acts 696. On neither occasion did the legislature expressly authorize an award of compound interest, although, clearly, it knew how to do so.
In short, Mrs. Whitt has cited no authority that supports the trial court's award of compound interest, and our own research has been equally unfruitful. Consequently, the judgment awarding Mrs. Whitt a sum in excess of the $5,787,808.23 paid into court by Burlington and Shalhoop, which correctly represents the principal with simple interest accrued from December 18, 1989, is reversed. The cause is remanded to the trial court for a disposition in accordance with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, STEAGALL and INGRAM, JJ., concur.
[1] It is also not without significance that Rule 54(a) itself defines a "judgment," for the purposes of "these rules," as 1a "decree and any order from which an appeal lies." Thus, an order that is nonappealable because it is nonfinal, would not qualify as a "judgment" under Rule 54(a).
[2] Because of the substantial influence of Rule 54(b) on the operation of the other provisions bearing on the date from which judgment interest accrues, we will pretermit discussion of cases not governed by Rule 54(b).