MeMILLAN, Judge.
The appellant, Willie Edward Harris, was convicted of theft of property, in violation of § 13A-8-3, Code of Alabama 1975, and was sentenced to 15 years’ imprisonment.
I
The appellant contends that the trial court erred in admitting evidence of his oral confession and all subsequent evidence derived from that confession.
A State’s witness, Richard White, chief investigator for the Covington County Sheriff’s Department, testified that on the date of the appellant’s arrest, October 12,1992, after reading him his Miranda rights, he took the appellant’s statement. Subsequently, outside the presence of the jury, a hearing was held regarding the admissibility of evidence of the appellant’s admission. Pertinent testimony from the two witnesses at that hearing is as follows:
Porter Harris, chief investigator with the Covington County District Attorney’s Office, testified on direct examination, that on October 16, 1992, in response to the appellant’s letter to the district attorney requesting a preliminary hearing, he went to the Coving-ton County jail and filled out an indigency form for him. He testified that “it [was] part of [his] job to go over to the jail and interview the defendant [and] to fill out a questionnaire form so the court [could] determine whether ... [a] defendant is eligible to hire his own counsel....” He testified that he had been performing this duty for the district court judge' for “almost 12 years.”
Regarding the particulars of his interview at the jail with the appellant, Porter Harris was cross-examined as follows:
“Q What was the first thing you told Willie?
“A When we got into the room — they put us in a room with a table....
[[Image here]]
“Q Now, you tell him who you are?
“A T am Porter Harris with the Coving-ton County District Attorney’s office. The district court has received your letter requesting a preliminary hearing. I am here to fill this form out. Before I fill the questionnaire form out I want you to understand what your constitutional rights are, sir.’ I explained to him what his rights are and then I asked does he want to talk to me and we go from there.
“Q Now why, if you are filling out a form for the court, do you advise him of his constitutional rights?
“A Because there are questions to be answered [on] that form, that is normal procedure. I don’t talk to anybody without advising them of their rights regardless to what it is. If he is a defendant I advise him of his rights.
“Q Are you asking these questions as an investigator for the district attorney’s office?
“A I am asking the questions for the district court I assume, because they are the ones that send me over to get the form filled out. There is no one else to do it.
“Q After you filled out the form as far as the questionnaire or whatever, did you talk to [the appellant] about [the victim]?
“A Mr. Harris stated to me, T might as well come clean, man. You know I took the wallet.’
“Q That was before you asked him any questions or anything like that?
“A That was after I completed the questionnaire form.”
Subsequently, the trial judge asked Porter Harris the following questions:
“THE COURT: You told him that you were Porter Harris, an investigator with the district attorney’s office and what; go from there.
“MR. P. HARRIS: That the district court had received his letter requesting a preliminary hearing and that I had come over to fill the questionnaire form out to take back to the district court to determine whether or not he was eligible to hire his own attorney or if the court was going to have *1318 to appoint him an attorney to represent him at the preliminary hearing.
“THE COURT: Was this before or after you read him his rights?
“MR. P. HARRIS: I read him his rights after I made that statement to him. I wanted him to know why I was there, what my purpose was for being there.
“THE COURT: Then what is the next thing that happened?
“MR. P. HARRIS: And I read him his rights. After I explained that, I read him his rights.
“THE COURT: Then what is the next thing that happened?
“MR. P. HARRIS: Then I proceeded to ask him the questions on the questionnaire form.
“THE COURT: Now at what point in time did this business come out? Did you have any other discussion with him about what you were doing there or why you were there or what you wanted?
“MR. P. HARRIS: No, sir. After I completed the questionnaire form on the front, over on the back it states — and I explained to him, ‘this applies to you here — It is my desire at this time to have counsel appointed by the court to represent me on the above charges. In support of this request I have answered the preceding questions relating to my ability to pay. I swear or affirm that these answers are true and reflect my present financial status. I understand that a false statement or answer to any questions in this' affidavit may subject me to penalties for perjury. I authorize, if necessary, the court or its authorized representative to obtain records or information pertaining to my financial status from any source.’ And then I asked him does he understand that and he said “Yes.’ And he signs it here and then it is sworn before me, a notary public. I am a notary public.
“THE COURT: And this is the form for requesting appointment of counsel?
“MR. P. HARRIS: Yes, sir, it is.
“THE COURT: What happened then? What is the next thing that happened?
“MR. P. HARRIS: T might as well come clean with you, man. I did get the man’s wallet, but I didn’t use force, I didn’t use a weapon. I just walked up to him and asked him to give me his wallet. He pulled his wallet out [of] his back pocket and gave it to me and I walked off with it.’ “THE COURT: Did you ask him any questions?
“MR. P. HARRIS: No, sir.
“THE COURT: Did you attempt to question him in any manner other than to help fill out this affidavit of indigence?
“MR. P. HARRIS: I stopped him and told him he needed to talk to Investigator Terry Langford with the sheriff’s department. “THE COURT: But what I am saying is did you question him in any way at any time?
“MR. P. HARRIS: No, sir.”
Subsequently, on re-cross-examination, Porter Harris was asked:
“Q Porter, is this your signature on this?
“A Yes, sir, it is.
“Q What does this say underneath it?
“A Judge or notary.
“Q Judge/notary.
“A Yes.
“Q Did you tell him whether you were acting as a judge or a notary or did you just have him sign it and then you signed it?
“A I signed it witnessing his signature. I did not tell him that I was a judge.
“Q You didn’t tell him that you were a notary, right? You just signed it, right?
“A Right, that’s correct.”
Next, Terry Langford, a deputy with the Covington County Sheriff’s Department, was asked, in pertinent part, the following questions on cross-examination:
“Q Now, Terry, why did you go over to the jail that day?
“A Porter Harris had called me and wanted to meet with me over at the jail.
“Q Did he tell you why?
“A Yes, sir.
“Q What did he tell you?
*1319 “A He told me that he had had a conversation [with] Willie Harris and that Willie wanted to take us and show us where he had put the wallet and had thrown the wallet out.
“Q That he wanted to?
“A Yes, sir.
“Q Did [he] tell you anything else about the conversation?
“A He said that he wanted to tell us what happened, what actually happened and Porter said that he wanted to get us over there before that actually took place.
“Q Had you talked to Porter about this case at any time before that?
“A Not to my knowledge.
“Q You just don’t remember?
“A Yes, sir.
“Q But the reason why you went over there was because Porter called you and told you that [Harris] wanted to make a statement?
“A Yes, sir.
[[Image here]]
“Q [Y]ou and Porter went in and you advised him of his rights [orally]?
“A Right.
“Q Did you fill out a form or anything then?
“A No.
“Q Did you know why Porter was there? “A He told me that he had to set a preliminary hearing.
“Q Did you say anything to Mr. Harris about the preliminary hearing or anything?
“A Not to my knowledge no, sir.
“Q Now was Porter with Willie Harris when you got there?
“A I believe Willie was in a room, in one of the rooms at the county jail.
“Q Was Porter with him when you got there?
“A I don’t think so.
“Q You don’t think so. You are not sure?
“A No, I’m not sure.
“Q Terry, you went over there and you met Porter on the steps, is that what you told us?
“A Right.
“Q Then what did y’all do?
“A He told me that [Harris] wanted to make a statement. So I went in.
[[Image here]]
“Q Did y’all walk in to where Willie was together?
“A Yes.
“Q Y’all went into the room where Willie was together?
[[Image here]]
“Q Then who was the first person to speak when y’all walked in together?
“A I believe Porter said that Willie has made a statement to me that he wanted to show us, meaning me.
“Q And him?
“A What?
“Q And him because he was there?
“A Right. Where he had thrown the wallet and he wanted to make a statement and tell exactly what happened on Friday afternoon.
[[Image here]]
“Q Then what happened then?
“A I read him his rights and we walked outside, myself and Investigator Bledsole. Went to my car and he told us how to get to where he had thrown it, George Street or Searcy Street, which ever one you want to say it; how to get there.
' “Q When did Porter leave?
“A When we left the jail it was just myself and Investigator Bledsole and Mr. Harris. Porter, to my knowledge, stayed at the jail or left after we did.”
Langford further testified that after he advised the appellant of his rights, the appellant went with him and showed him where the stolen wallet was located. Langford testified that he then immediately took the appellant back to jail where he made a taped statement, confessing his guilt.
Following the hearing, the trial court deemed the confession to be admissible.
The cardinal rule regarding the admissibility of confessions was aptly stated in Bui v. State, 551 So.2d 1094, 1107-08 (Ala.Cr.App.1988):
*1320 “[A] confession is prima facie involuntary and inadmissible, and the state must show voluntariness and a Miranda predicate in order for it to be admitted. Thomas v. State, 373 So.2d 1167 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976); Magwood v. State, 494 So.2d 124 (Ala.Cr.App.1985), aff'd, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). Whether there was a waiver of the right to remain silent and the right to counsel and whether it was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of accused — the totality of the circumstances. Thomas v. State; Magwood v. State; Chandler v. State, 426 So.2d 477 (Ala.Cr.App.1982) (citing Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). The question of whether a confession was voluntary is initially to be determined by the trial court. Ex parte Singleton, 465 So.2d 443 (Ala.1985). Thereafter, the voluntariness as affecting the credibility and weight to be given any statement that an accused has made is a determination for the jury. Id. The finding of the trial court will not be disturbed on appeal unless it appears contrary to the great weight of the evidence or is manifestly wrong. Magwood v. State; Marschke v. State, 450 So.2d 177 (Ala.Cr.App.1984). Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Chambers v. State, 455 So.2d 1008 (Ala.Cr.App.1984); Bennett v. State, 409 So.2d 936 (Ala.Cr.App.1981), cert. denied, 457 U.S. 1137, 102 S.Ct. 2968, 73 L.Ed.2d 1356 (1982). The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. Ex parte McCary, 528 So.2d 1133 (Ala.1988); Ex parte Singleton. The fundamental requirements for voluntariness are that the court must conclude, in order to find a defendant’s confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him. Martin v. Wainwright, 770 F.2d 918 (11th Cir.1985), modified on other grounds, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); Jurek v. Estelle, 623 F.2d 929 (5th Cir.1980) (en banc), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); Magwood v. State; Harris v. State, 420 So.2d 812 (Ala.Cr.App.1982).”
■[8] Pursuant to a totality of the circumstances evaluation, a thorough examination of the record of the suppression hearing reveals the following uncontradieted facts:
1) Chief Investigator for the district attorney’s office, Porter Harris, went to the jail to assist the appellant in filling out an affidavit of indigence.
2) Investigator Harris informed appellant of his Miranda rights before asking any questions about the affidavit of indigence.
3) The appellant told Investigator Harris that he understood his rights.
4) Upon completion of the affidavit of indigence, the appellant made the following oral admissions to Investigator Harris:
“[W]ell I might as well come clean with you. I did take the man’s wallet, but I did not use any force, I did not have any kind of weapon. I walked up behind him, asked him for his wallet, he pulled his wallet out and he gave it to me and left with[out] it. I can show where the wallet is at across town.”
5) Subsequent to the appellant’s oral admissions, Investigator Harris contacted Sheriffs Deputy Terry Langford who then met with the appellant and informed him of his Miranda rights.
6) Subsequent to signing a waiver of rights form, the appellant took deputy Langford to the location where he had dropped the stolen wallet.
*1321 7) After signing a second waiver of rights form, the appellant gave a taped confession to deputy Langford.
8) The appellant was not subjected to threats, intimidations, inducements, coercion or protracted interrogation prior to making his taped confession.
In light of the foregoing uncontradicted facts, we conclude that the trial court’s determination of voluntariness was correct and that the appellant’s admission and taped confession were, thus, properly admitted into evidence.
II
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal based on the State’s failure to prove a prima facie case. Section 13A-8-3(a), Code of Alabama 1975, provides: “The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.”
The State’s first witness, the victim, James Albert Justice, testified that he was visiting his son-in-law in River Falls, Alabama, when the incident occurred. He testified that while he was walking to his son-in-law’s house, an individual grabbed him from behind and demanded his wallet, which contained $25. He further testified that he did not see the attacker’s face because he threatened to kill him if he “moved.”
Byron Summers, a resident of River Falls, testified that he was riding his bicycle when he saw the appellant, approximately 95 to 100 feet away, grabbing the victim from behind. He testified that the appellant “had his left arm around [the victim’s] neck and his right arm around [the victim’s] waist.” He testified that, as he approached the appellant on his bicycle, the appellant “turned [the victim] loose.” He testified that the appellant then ran into the house of his brother, Lonnie C. Harris. He further testified that he did not actually see the appellant take the victim’s wallet.
Additionally, as stated earlier, the appellant made an admission of guilt and subsequently gave a taped confession to law enforcement authorities.
In Cox v. State, 585 So.2d 182, 203-204 (Ala.Cr.App.1991), this court reiterated the principles involved in reviewing the sufficiency of the evidence necessary to support a conviction based on circumstantial evidence:
“ ‘ “The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala.1980):
“ ““ “In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
“ ““ “[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir.1967):
“ ““ “ ‘Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949.... The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there *1322 exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.””’”
“ ‘ “391 So.2d at 137-38, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala.1979).” Robinette v. State, 531 So.2d 697, 698-99 (Ala.1988).
“ ‘ “In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.” Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, 471 So.2d 493 (Ala.1985).
“ ‘ “This Court must revise and overturn the verdicts of juries Svhere, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach the conclusion that the finding and judgment are wrong.’ Hunter v. State, 34 Ala.App. 565, 567, 41 So.2d 637 (1949).” Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App.1985).
“ ‘ “ ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches ‘a clear conclusion that the finding and judgment are wrong.’ Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). ‘The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust.’ Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821 (1969).
“ ‘... Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985). “It is not necessary for a conviction that the defendant be proved guilty to the ‘exclusion of every possibility of innocence.’ ” Burks v. State, 117 Ala. 148, 23 So. 530 (1898). “The facts and circumstances in evidence, if dissevered and disconnected, may be weak and inconclusive; but their probative force, when combined, as it was the province of the jury to combine them, under proper instructions from the court, may have satisfied them of the guilt of the defendant.” Howard v. State, 108 Ala. 571, 18 So. 813, 815 (1895).”
Applying the aforestated authority to the facts of this case, we conclude that the State presented sufficient evidence to sustain the verdict of guilt.
Ill
The appellant contends that the sentence imposed by the trial court was excessive. The appellant received a 15-year sentence for theft in the first degree, which is a Class B felony. Because the sentence fell within the proper range of punishment for a Class B felony, the sentence was proper. See § 13A-5-6(a)(2), Code of Alabama 1975, which provides:
“(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:
[[Image here]]
“(2) For a Class B felony, not more than 20 years or less than 2 years.”
The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.