The appellant was indicted for three counts of capital murder in the murder of J.W. Griffin: murder committed during a burglary in the first degree, murder committed for pecuniary consideration, and murder committed pursuant to a contract for hire. The appellant was also indicted for one count of theft of property. The count charging murder made capital because it was committed pursuant to a contract for hire, was subsequently dismissed. The jury found the appellant guilty on the remaining counts and recommended, by a vote of 12-0, that he be sentenced to life imprisonment without the possibility of parole. Thereafter, a sentencing *Page 165 
hearing was held before the trial court and the court ordered that the appellant be sentenced to death by electrocution. The appellant was also sentenced to 20 years' imprisonment on his theft conviction.
The record indicates that during the late evening hours of July 10, 1993, or the early morning hours of July ll, 1993, J.W. Griffin was killed at his home in Geneva. The victim's son, Greg Griffin, found his father dead on the morning of July 11, 1993. Griffin's hands were down by his side and his pants were unzipped. He had been shot once above the right eye and once in the center of the back. The State presented evidence that all of the doors to Griffin's mobile home were shut and his car was parked in the front yard. A chair with a footprint on it was found at an exterior bedroom window and the screen was lying on the ground. It appeared that the assailant had entered the mobile home through the window. There was no sign of a struggle.
James Linder, a friend and coworker of the appellant's, testified that, on June 17, 1993, he accompanied the appellant on what was to be a trip from Ocala. Florida, to a possible construction job. The appellant's car, however, broke down in Lake City, Florida. Linder testified that the appellant called a acquaintance, Jim Fletcher, who came and picked them up and took them to Ocala. The following day Linder and the appellant drove to Geneva, Alabama, in Jim Fletcher's truck. Linder testified that it was during this trip that the appellant told him that the purpose of the trip was to kill Griffin. The appellant offered to pay Linder $300 if Linder would drive him. The appellant also told Linder that there would be future jobs involving much larger compensation if this one went well. Upon arriving in Geneva, the two were unable to locate Griffin at either his residence or his place of business, which was produce stand. They spent two nights in Geneva and then returned to Florida. Linder testified that on July 10, 1993, he and the appellant returned to Geneva. According to Linder, the appellant had a revolver in his possession. Linder dropped the appellant off at a vacant lot near Griffin's mobile home. The plan was for the appellant to go to Griffin's home, kill him, and return to the truck, where Linder would be waiting to drive him back to Florida. Linder testified that from where he was waiting, he could see people attending a pool party. He testified that after several minutes had passed, a man, later identified as Al Danner, approached him and asked him what he was doing there. He testified that shortly thereafter, police officers arrived and questioned him. Linder told the officers that he had lost his identification, and he gave the name and birth date of a friend, Albert Faulk, as his own. Linder testified that, after the officers instructed him to move on, he pulled into a nearby gasoline station, purchased a soft drink, and proceeded to Panama City, Florida, where he spent the night.
That night, Linder telephoned Jim Fletcher, who instructed him to meet the appellant at the Greyhound bus station in Panama City the next morning. Linder testified that, while at the bus station, the appellant told him that "it's not like on TV" and "people — they don't grunt when they go down." The appellant told Linder that he had crawled through a window and that he shot Griffin twice. Linder testified that the appellant told him that Jim Fletcher had wired money to him in Panama City but that he was unable to find a Western Union Telegraph Company outlet that was open for business. Linder, however, found a Western Union store and when the appellant returned to Ocala he was to send Linder a portion of the original transfer from Fletcher. Linder testified that he received the money and then returned to Oklawaha, Florida. There, Linder was instructed by Fletcher to get rid of the truck. He testified that he took the truck into a wooded area and burned it. Linder did not see the truck again until he and the appellant went to the area to show the truck to Ronnie Thomas, a mechanic, who was interested in buying the truck.
Jim Fletcher testified that he was a resident of Oklawaha and that he had known the appellant for several years. He testified that a man named Jessie Richburg had approached him about killing J.W. Griffin. Fletcher said that he did not do anything like that and referred Richburg to the appellant. *Page 166 
He testified that, during the early months of 1993, the appellant informed him that he had accepted the "job" and would receive $5,000. Fletcher testified that on June 9, 1993, the appellant drove his truck to Geneva to "scout the job out." He had to wire $100 to the appellant in Panama City so that he could afford to return to Geneva. Fletcher testified that he became aware that the appellant had attempted a second trip to Geneva when the appellant called him requesting help because his car had broken down in Lake City, Florida. Fletcher drove to Lake City and transported the appellant and James Linder back to Oklawaha. Fletcher testified that the following morning the appellant told him that he and Linder would be taking Fletcher's truck to Geneva to kill Griffin. Two days later, the appellant telephoned Fletcher from Panama City stating that he and Linder had been unable to locate the victim and that he needed him to wire $100 so that they could return home.
Fletcher testified that, shortly thereafter, he obtained a "throw away" gun from Richburg and passed it on to the appellant. Fletcher testified that, on the weekend of July 10, 1993, he received a telephone call from the appellant. The appellant instructed him to call a certain number and say the following: "Listen, I'm only going to say this one time. It's done, it came out dirty, I'm going to need more money and I'll see you tomorrow." The appellant also stated that he and Linder had gotten separated and that he asked Fletcher to wire him $300. Fletcher testified that he complied with the appellant's requests. Approximately three hours later, Fletcher received a telephone call from the appellant's exwife, who asked him for $50 so that she could purchase a bus ticket from Panama City to Ocala for the appellant. The ticket was wired from Ocala to Panama City where the appellant signed for it. Fletcher testified that he saw the appellant on Monday. The appellant told him that he had climbed into Griffin's mobile home through a window and shot him twice. The appellant told him that Griffin had been lying on the couch and when he got up to go to the bathroom, he shot him.
Rita Boyette testified that she lived approximately one mile from Griffin's mobile home. She testified that, on the night of the murder, her 1983 Ford LTD automobile was stolen from her carport. The abandoned car was found at a construction site in Panama City, Florida, by an officer of the Panama City Police Department. The State presented evidence that fingerprints and palm prints discovered in the automobile matched those of the appellant.
Blanche Kay Klapper, a friend of the appellant and Linder, testified that the appellant asked her to keep his son on the weekend of July 10 because he "had a job to do." The following Monday she picked the appellant up at a convenience store. She and the appellant left the store and went to Jim Fletcher's house, at the appellant's request. On the way, the appellant told her that "he could be looking at facing the [penitentiary] or maybe the [electric] chair because somebody was killed." Klapper testified that she then told the appellant that she did not want to hear any more. She testified that, after she and the appellant arrived at Fletcher's house, the appellant and Fletcher had a conversation, which she did not hear.
Jimmy Hand, an investigator with the district attorney's office in Dale and Geneva Counties, testified that Griffin had been involved as an informant in a federal investigation involving Jessie Richburg. He testified that Griffin's ex-wife, Rhonda Bohannon, knew that Griffin was an informant. He testified that Bohannon and Richburg had been seen together before and after Griffin's death.
 I.
The appellant argues that the trial court erred in allowing the jury to consider the uncorroborated testimony of his accomplices. Jim Fletcher and James Linder, in violation of § 12-21-222,Code of Alabama 1975.
The appellant argues that Jim Fletcher should have been considered an accomplice. The trial court, however, in its instruction to the jury, stated that both Linder and Fletcher were to be "classified as accomplices." *Page 167 
Thus, there was no error; Fletcher was treated as an accomplice.
According to § 12-21-222, Code of Alabama 1975:
 "A conviction of felony cannot be had on testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
In Chevere v. State, 607 So.2d 361, 365-66 (Ala.Cr.App. 1992), this court reiterated the prevailing law regarding corroborative evidence, as follows:
 "`"The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a `subtraction process.' The test is general stated:
 "`"First, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.'"
 "`McCoy v. State, 397 So.2d [577] at 586 [(Ala.Cr.App), cert. denied, 397 So.2d 589 (Ala. 1981)] (citations omitted, emphasis in original).
 "`"[C]orroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone."
 "`Mills v. State, 408 So.2d [187] at 191 [(Ala.Cr.App. 1981)].
 "`"The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, § 746.'
 "Colvette, 568 So.2d at 321-22, quoting Moore v. State, 30 Ala. App. 304, 307, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942).
 "`Corroborate' is defined as to `strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence.' Black's Law Dictionary
344 (6th ed. 1990). The evidence presented in corroboration does not have to be enough standing alone to result in a conviction. The corroborating evidence need not be `strong.' Andrews v. State, 370 So.2d 320, 322 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979). See also Reed v. State, 407 So.2d 153 (Ala.Cr.App. 1980), rev'd on other grounds, 407 So.2d 162 (Ala. 1981).
 "Section 12-21-222, `[d]oes not require corroborative testimony as to material elements of the crime . . .' Ex parte Bell, 475 So.2d 609, 613
(Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), but, the corroborative evidence must `tend to connect the defendant with the commission of the crime.' § 12-21-222, Code of Alabama 1975. `The corroboration of an accomplice may be shown by circumstantial evidence.' Kuenzel v. State, 577 So.2d 474, 516 (Ala.Cr.App. 1990), aff'd, 577 So.2d 631 (Ala. 1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
 "`"The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. . . .
 "`"In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration."'
 "Glasco v. State, 513 So.2d 54 (Ala.Cr.App.), cert. denied, 513 So.2d 61 (Ala. 1987), quoting Ware v. State, 409 So.2d 886 (Ala.Cr.App. 1981), writ quashed, 409 So.2d 893 (Ala. 1982). (Emphasis supplied.) (Citations omitted.) The accused's proximity to *Page 168 
the crime is a relevant consideration when determining whether sufficient corroboration of the accomplice's testimony exists. Andrews, supra. However, the accused's proximity itself, in most cases, is not enough evidence for corroboration. `If, however, the accused is in close proximity to the crime and there is other evidence indicating guilt, such a combination of evidence is sufficient to corroborate the testimony of an accomplice.' C. Gamble, McElroy's Alabama Evidence, § 300.01 (14) (4th ed. 1991)."
See also Porter v. State, 654 So.2d 63 (Ala.Cr.App. 1994).
The testimony that corroborated Linder's and Fletcher's testimony was as follows: Al Danner testified that on the night of the murder, he questioned a man sitting in a parked truck in a secluded lot; near Griffin's home. He became suspicious and alerted the police department. Danner told police that the man, whom he later identified as James Linder, told him that his name was Albert Faulk. Officer Tony Clemmons, of the Geneva Police Department, testified that he responded to Danner's telephone call. He testified that, when he approached Linder, Linder identified himself as Albert Faulk but told Clemmons that he had lost his identification. Officer Ronald Gilbert testified that he served as Officer Clemmons's "backup." He testified that he observed Linder leaving town after making a brief stop at a gas station. The testimony of all of these aforementioned witnesses was consistent with Linder's testimony.
Rita Boyette testified that her car, which was parked near Griffin's residence, was stolen on the night of the murder. She testified that the car was later found abandoned in Panama City. The appellant admitted stealing the car. The State presented evidence that on the day after the murder, the appellant's ex-wife wired $50 to him in Panama City so that he could buy a bus ticket to Ocala. The State also presented evidence of all monetary transactions between the appellant, his ex-wife. Linder, and Fletcher through the testimony of Greyhound bus company employees and Western Union employees. Ronnie Thomas testified that the appellant telephoned him and inquired as to whether he was interested in buying a burned truck. Officers Clemmons and Gilbert testified that the burned truck was the truck Linder was driving on the night of the murder. Kay Klapper testified that the appellant talked to her the week following the murder about "looking at facing the pen or maybe the chair because somebody was killed."
The appellant also argues that there was insufficient corroborating evidence regarding the count of murder made capital because it was committed for pecuniary gain. Therefore, he argues, the pecuniary gain count should be dismissed for lack of proof.
However, in a similar situation, this Court, in Hood v. State,598 So.2d 1022, 1024-25 (Ala.Cr.App. 1991), overruled on other grounds, Ex parte Thomas, 659 So.2d 3 (Ala. 1994), stated:
 "The appellant acknowledges the congruence between most of McCarter's testimony and the other evidence presented by the State, but he insists that because the `for hire' element of the capital offense was not independently corroborated, the State did not establish a prima facie case of capital murder. That is not the law in Alabama.
 "As early as 1867, our Supreme Court held that a charge requiring corroboration of `every material part' of an accomplice's testimony `went beyond the requirements of the statutory rule, or any rule recognized by the common law.' Montgomery v. State, 40 Ala. 684, 688 (1867). More recently, in Ex parte Bell, 475 So.2d 609, 613 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), a capital case, the court held that Ala. Code 1975, § 12-21-222, `does not require corroborative testimony as to material elements of the crime; if only requires other evidence "tending to connect the defendant with the commission of the offense."' See also Andrews v. State, 370 So.2d 320 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979), wherein this court observed:
 "`The corroboration of an accomplice must tend to connect the accused with the commissioned of the crime but need *Page 169 
not refer to any statement or fact testified to by the accomplice. "Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony." . . . Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.'
"Andrews, 370 So.2d at 322."
(Emphasis added.)
After the testimony of the accomplices is eliminated, the remaining evidence sufficiently tends to connect the appellant with the commission of the crime. Thus, there was sufficient corroboration of the accomplices' testimony for the case to be submitted to the jury.
 II.
The appellant argues that the trial court erred in refusing to give 14 of his 34 requested charges during the guilt phase of his trial. Generally, he argues that all of the refused charges should have been given because, he says, they are correct statements of law.
The appellant agues that the trial court inadequately instructed the jury on the law regarding the necessity of independent corroboration of accomplice testimony. A review of the charges. However, establishes that the appellant's claim is without merit because the trial court's instruction to the jury substantially and fairly covered the appellant's requested instructions. Clark v. State, 621 So.2d 309 (Ala.Cr.App. 1992);Ward v. State, 610 So.2d 1190 (Ala.Cr.App. 1992); Raper v. State,584 So.2d 544 (Ala.Cr.App. 1991); Bogan v. State, 529 So.2d 1029
(Ala.Cr.App. 1988). This same analysis is applicable to the appellant's claim that the trial court inadequately instructed the jury on reasonable doubt, circumstantial evidence, and the presumption of innocence. Because the instructions given by the trial court adequately covered these subjects, the appellant's claim is without merit.
The appellant's argument that the trial court erred in failing to instruct the jury, in four separate requested charges, that it "must find the appellant not guilty," is without merit because the charges were legally incorrect and invaded the province of the jury. Hood v. State, 698 So.2d 1022 (Ala.Cr.App. 1991).
Because the requested charges were substantially covered in the trial court's oral charge or were refused as misleading or incorrect statements of law, no error occurred here.
 III.
The appellant argues that there was insufficient evidence presented by the State to support his conviction for capital murder and his sentence of death. Specifically, he argues that the State improperly relied on circumstantial evidence to obtain a conviction. He argues that, without the testimonies of Linder and Fletcher, the State had no case.
In Part I of this opinion, we held that the testimony of the accomplices was sufficiently corroborated, as required by §12-21-222. Code of Alabama 1975. Moreover, the record indicates that the State presented sufficient evidence to sustain the conviction.
The principles governing our review of the sufficiency of circumstantial evidence are set out in Harris v. State,649 So.2d 1315, 321-22 (Ala.Cr.App. 1994), as follows:
 "`"`The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala. 1980):
 "`"`"`In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (6th Cir. 1971); Clark v. United States, 293 F.2d 146 (6th Cir. 1961). *Page 170 
 "`"`"`[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185
(5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "`"`"`"Our obligation, therefore, is to examine the record to determine whether there is any, theory of the evidence from which the jury
might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir. 1963, 321 F.2d 140; Riggs v. United States, 5 Cir. 1960, 280 F.2d 949 . . . The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlammory, 441 F.2d at 135 and 136.'"'"'
 "`"`391 So.2d at 137-38, quoting Cumbo v. State, 368 So.2d 871, 871 (Ala.Crim.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979).' Robinette v. State, 531 So.2d 697, 698-99 (Ala. 1988).
 "`"`In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, Ex parte Faircloth, 471 So.2d 493 (Ala. 1985).
 "`"`This Court must revise and overturn the verdicts of juries "where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach the conclusion that the finding and judgment are wrong." Hunter v. State, 34 Ala. App. 565, 567, 41 So.2d 637 (1949). Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App. 1985).
 "`"`"The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). "The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumption of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust." Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821 (1969).
 "`". . . Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused." Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App. 1984), affirmed in pertinent part, reversed in part, on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala. 1985). "It is not necessary for a conviction that the defendant be proved guilty to the `exclusion of every possibility of innocence.'" Burks v. State, 117 Ala. 148, 23 So. 530 (1898). "The facts and circumstances in evidence, if dissevered and disconnected, may be weak and inconclusive; but their probative force, when combined, as it was the province of the jury to combine them, under proper instructions from the court, may have satisfied them of the guilt of the defendant." Howard v. State, 108 Ala. 571, 18 So. 813, 814 (1895).'"
The State presented sufficient evidence to support the conviction and the aggravating circumstances that the murder was committed during a burglary and for pecuniary gain. *Page 171 
 IV.
The appellant argues that the trial court's decision to override the jury's recommendation of life imprisonment without parole and to sentence him to death was not supported by either the evidence or the law. He urges this Court to independently weigh the factors and remand this case to the trial court with an instruction to commute his sentence to life imprisonment without the possibility of parole.
It is clear that upon the appellant's conviction for capital murder he was eligible for a sentence of death. § 13A-5-40
(a) (4) and (7). Code of Alabama 1975. After such a sentence, it is mandatory that this Court independently review the propriety of a death sentence, pursuant to § 13A-5-53 (a), Code ofAlabama 1975. This Court has stated its findings pursuant to that review under Part VII, infra, of this opinion. A review of the record and the weighing of the circumstances surrounding the offense and the appellant indicates that there was no error committed during the guilt phase of the trial or at sentencing that adversely affected the rights of the appellant. Further, the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence. Based upon the facts and circumstances before the trial court, the death sentence was proper; hence the appellant's argument must fail. § 13A-5-53 (b) and (c). Code of Alabama 1975.
 V.
The appellant argues that the Alabama statutory scheme that allows the trial court to override the advisory verdict of the jury violates his constitutional rights because, he says, it results in a random, arbitrary imposition of the death penalty. In support of his claim, the appellant argues that only four states in which a sentence of death is a statutorily available punishment permit a trial judge to override a jury verdict recommending life imprisonment as the punishment. Section13A-5-47 (e), Code of Alabama 1975, provides:
 "In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to section 13A-5-46
(a) or 13A-5-46(g). While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
This precise issue was thoroughly discussed and decided adversely to the appellant by the United States Supreme Court inHarris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031,130 L.Ed.2d 1004 (1995). The Harris court held that the "`Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws.'" Harris, 115 S.Ct. at 1034, quoting Spaziano v.Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340
(1984). The Harris Court further held that the "`Eighth Amendment does not require the State to define the weight the sentencing judge must accord to an advisory jury verdict.'" Id.,115 S.Ct. at 1036. Thus, the appellant's argument is without merit.
 VI.
The appellant argues that the death penalty constitutes cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.
There is an abundance of caselaw, however, that holds that the death penalty is not per se cruel and unusual punishment. Neither is electrocution, as a means of capital punishment, cruel and unusual punishment, in violation of the Eighth Amendment.Williams v. State, 556 So.2d 737, 741 (Ala.Cr.App. 1986), aff'd. in part, rev'd in part on other grounds, 556 So.2d 744 (Ala. 1987); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960,49 L.Ed.2d 913 (1976); Furman v. Georgia, 408 U.S. 238,92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Zant v. Stephens, 462 U.S. 862,103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Boykin v. State, 281 Ala. 659,207 So.2d 412 (1968), reversed on other grounds, Boykin v.Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Page 172 
Therefore, the appellant's argument is without merit.
 VII.
In accordance with § 13A-5-53, Code of Alabama 1976, we have reviewed the record, including the guilt and sentencing proceedings, for any error that adversely affected the rights of the appellant, and we have found none. We find no evidence that the sentence was imposed under influence of passion, prejudice, or any other arbitrary factor.
As indicated in its written findings of fact, the trial court properly found the existence of two aggravating circumstances: that the murder was committed during a burglary, § 13A-5-49
(4), Code of Alabama 1975, and that the murder was committed for pecuniary gain, § 13A-5-49 (6), Code of Alabama 1975. The trial court found the existence of one statutory mitigating circumstance: that the appellant has no criminal history. §13A-5-51 (1), Code of Alabama 1976. In considering the remaining statutory mitigating circumstances, the trial court stated:
 "[T]he capital offense was not committed while the defendant was under the influence of extreme mental or emotional disturbance; the victim was not a participant in the defendant's conduct or consented to it; the defendant was not an accomplice, but was the actual killer; the defendant was not acting under extreme duress or under substantial domination of another person; and that the defendant did appreciate the criminality of his conduct and was fully aware of what he was doing and that his capacity to conform his conduct to the requirement of law was not substantially impaired and that the defendant was 35 years old on July 10, 1993."
We find no error in the trial court's holding that these statutory mitigating circumstances were not present in this case. As to any nonstatutory mitigating circumstances, the trial court stated that it had considered "the disposition of the charges or possible charges against the others who were involved in the murder." The court further stated that it had considered the other circumstances offered by the defendant as mitigating circumstances at the court's sentencing hearing.
As to the weighing of the aggravating and mitigating circumstances, the trial court wrote:
 "The Court has considered all of the evidence presented in the case and the Court has weighed the aggravating and mitigating circumstances against each other. The Court finds that the aggravating circumstances which exist outweigh the mitigating circumstances which exist."
Thus, the record indicates that the trial court considered the jury's advisory verdict.
After an independent weighing of the aggravating and mitigating circumstances in this case, we find that the evidence supports the trial court's conclusion and indicates that death was the proper sentence. The appellant's statements, actions, role in the offense, and the evidence supporting his guilt, lead us to this conclusion.
Therefore, the appellant's conviction and sentence of death are proper, and the judgment of the circuit court is affirmed.
AFFIRMED.
All judges concur.