139 So.2d 326

**John Harvey KELLY**

**v.**

**STATE of Alabama.**

**6 Div. 534.**

Supreme Court of Alabama.

March 22, 1962.

Peter A. Hall, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

On an information filed by the Circuit Solicitor of Jefferson County, Alabama, John Harvey Kelly was convicted for a violation of Title 14, Sec. 56 of the Code of Alabama 1940. The trial was had on evidence taken ore tenus before the trial judge, and without the aid of a jury. A motion to set aside the judgment and grant a new trial was overruled. Kelly appealed to the Court of Appeals of Alabama.

Under and pursuant to the provisions of Title 13, Sec. 102 of the Code of 1940, the cause was transferred to this Court.

Section 56 of Title 14, Code 1940, reads as follows:

"Any person, firm, corporation or association of persons who prints, or circulates any notice of boycott, boycott cards, stickers, dodgers, or unfair lists, publishing or declaring that a boycott or ban exists or has existed or is contemplated against any person, firm, corporation, or association of per-

sons doing a lawful business, shall be guilty of a misdemeanor."

Section 56, supra, is a part of Chapter 20, Title 14, Code 1940, dealing with "Boycotting and Blacklisting." It was codified from Act No. 23, General and Local Acts of Alabama, Sp.Sess.1921, p. 31.

Section 54, Title 14, Code 1940, is also a codification of the same General Act of 1921, and deals with the same subject "Boycotting and Blacklisting." Sec. 54 of Title 14, reads:

"Two or more persons who, without a just cause or legal excuse for so doing, enter into any combination, conspiracy, agreement, arrangement, or understanding for the purpose of hindering, delaying, or preventing any other persons, firms, corporation, or association of persons from carrying on any lawful business, shall be guilty of a misdemeanor."

Appellant Kelly insists that said Sec. 56, supra, is unconstitutional and void as violative of the due process clause of the 14th Amendment to the Constitution of the United States and Article 1, Sec. 4 of the Constitution of Alabama 1901.

Section 2 of the 1921 Act (Act No. 23, supra) was not brought forward in the 1940 Code, but reference to it is made as Sec. 55 of Title 14, Code 1940. Sec. 2 reads as follows:

"Any person or persons who, without a just cause or legal excuse therefor, go near to or loiter about the premises or place of business of any other person, firm, corporation, or association of people, engaged in a lawful business, for the purpose, or with the intent of influencing, or inducing other persons not to trade with, buy from, sell to, have business dealings with, or be employed by such persons, firm, corporation, or association, or who picket the works or place of business of such other persons, firms, cor-

porations, or associations of persons, for the purposes of hindering, delaying, or interfering with, or injuring any lawful business or enterprise of another, shall be guilty of a misdemeanor; but nothing herein shall prevent any person from soliciting trade or business for a competitive business."

In 1936, the Supreme Court of the United States, in Thornhill v. State, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, struck down Sec. 2 of the 1921 Act, supra, as being a denial of freedom of speech and contrary to the 14th Amendment of the Constitution of the United States.

In 1943, in the case of Lash v. State, 244 Ala. 48, 14 So.2d 229, 31 Ala.App. 121, 14 So.2d 235, cert. den. 244 Ala. 568, 14 So. 2d 242, cert. den. 320 U.S. 784, 64 S.Ct. 192, 88 L.Ed. 471, rehearing den. 320 U.S. 814, 64 S.Ct. 259, 88 L.Ed. 492, this Court had before it the question of the constitutionality of Sec. 54, supra, and the same questions were raised in the Lash case as are raised in the instant case.

The Supreme Court of Alabama, for reasons stated, held that Sec. 54, supra, was not subject to the attack made upon it by Lash. Certiorari was denied by the Supreme Court of the United States. Lash v. State, supra.

■ It is axiomatic that sections of the Code dealing with the same subject are in pari materia.

It is implicit in Sec. 56, supra, that the printing or circulating of the matters condemned by Sec. 56 is the "unlawful printing or circulating," in other words, "printing or circulating without just cause or legal excuse."

■ The opinion in the Lash case, supra, is a complete answer to the constitutional questions presented in the case now before us. We see no point in repeating what was there said, but on that authority, we hold that the constitutional questions raised here are without merit.

■ The information filed in the instant case is in the language of the statute and was sufficient. The motion to strike the information and the demurrer interposed to it were overruled without error.

But we feel impelled to reverse and remand this case on the ground that the judgment is against the weight of the evidence, and for the refusal of the trial court to grant a new trial based on that ground.

The statement of facts contained in appellant's brief are concurred in by the Attorney General except as to the last two paragraphs, which he contends contains conclusions and arguments rather than facts. The statement of facts is as follows:

"On the night of November 15, 1958, sometime between 11:00 P.M. and midnight, the defendant, John Harvey Kelly, had occasion to visit 'Obbie Harris' Cafe' near the Hayes Aircraft Plant, in the City of Birmingham, where he found Henry McKeithen, James Medlock and Charles E. Fitzpatrick.

"At said time and place, he had two or three copies of printed boycott notices in his possession which he glanced at and passed on to McKeithen, Medlock and Fitzpatrick, or one of them, with the direction to read it, or a question as to whether they had seen anything like it before. After a short time, defendant left the cafe and went on to the Hayes Aircraft Plant where he reported for work at about 10 minutes until 12 o'clock. Within an hour after defendant had reported to work, Officers Cashatt and Minor of the City Police Department questioned defendant at the Hayes Aircraft Corporation, and also searched defendant and his car but found no other handbills. At this time, defendant made a statement to the officers claiming to have found the handbills and admitting that he took them into the cafe to read and then passed them on to McKeithen and Fitzpatrick. At this time, defendant was not arrested but allowed to return to work. Subsequently, on November 17, 1958, he was arrested by Detective T. E. Lindsay. On his trial, defendant testified that on the days in question, he had gone to bed between 5 and 5:30 o'clock in the afternoon, and had gotten up around 11 o'clock P.M.; that ten or fifteen minutes later, as he approached his car, parked on the street in front of his place of residence, he noticed several handbills scattered in the street near the car; that he picked up one 'piece of paper,' put it in his pocket, got in his car and drove to 'Obbie's place' to get some candy and cookies; that after he got to Obbie's place, he noticed 'some paper under the windshield,' which he removed; that after he got in Obbie's place, he took the papers out of his pocket and 'looked to see what it was.' He then passed the papers to the fellows asking them if they had seen 'anything like it,' and left for work. He denied that he had read the dodger; denied that he knew that a bus boycott was in process; denied that he, individually, was engaged in such a boycott, or was associated with anyone who was.

"The state offered no proof designed to contradict defendant's testimony, or to show that defendant was part of a conspiracy to boycott the transit company.

"The judge found defendant guilty as charged in the complaint and fixed his punishment at $1,000 fine plus costs, and a six months' term at hard labor for Jefferson County, Alabama. Defendant filed a motion for a new trial, which was overruled, and to which defendant duly and legally took exception. Hence, this appeal."

■ It is axiomatic that in the trial of all criminal cases the state has the burden of proving every element of the offense charged, and to a degree beyond a reasonable doubt and to a moral certainty.

■ And we are not unmindful of the rule that when, as here, the evidence was

heard orally by the trial judge, his findings have the weight of a jury's verdict and will not be disturbed on appeal unless palpably wrong or unjust.

We are unwilling to say that there was no evidence from which the trial court could find the defendant guilty. The judgment of a trial court is a solemn pronouncement, and an appellate court should most hesitantly disturb it.

■ On the other hand, the duty remains in this Court "to revise the verdict of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach a clear conclusion that the finding and judgment are wrong." Bowen v. State, 32 Ala.App. 357, 26 So.2d 205; Taylor v. State, 30 Ala.App. 316, 5 So.2d 117.

■ After an examination of this record with painstaking care, we are clear to the conclusion that the judgment is wrong and unjust and should be reversed. It is so ordered.

Reversed and remanded.

LAWSON, SIMPSON and MERRILL, JJ., concur.