The Coffee County Commission ("Commission") petitions this Court for a writ of certiorari to review a judgment of the Court of Civil Appeals that affirmed a judgment invalidating a local ordinance providing for a county sales tax. We affirm.
On June 2, 1989, a class action suit was filed in the United States District Court for the Middle District of Alabama on behalf of inmates incarcerated in the Coffee County jail. The complaint alleged that the condition of the jail facilities resulted in a deprivation of the prisoners' constitutional rights. Acknowledging the need for better facilities, the Commission voted to build a new jail. In order to augment its sources of financing for the construction, the Commission, on July 24, 1989, passed an ordinance imposing a "privilege or license tax . . . against all business activities in the county, the amount to be determined by the application of rates against the gross sales or gross receipts." Coffee CountyCommission v. Townsend, 583 So.2d 983, 984
(Ala.Civ.App. 1990).
On November 1, 1989, the effective date of the ordinance, a group of taxpayers brought an action in the Circuit Court of Coffee County seeking a declaration that the sales tax ordinance was invalid. On January 3, 1990, the circuit court held the ordinance to be void and unenforceable[1] and the Commission appealed.[2]
On May 23, 1990, the Court of Civil Appeals affirmed the judgment of the circuit court. The Commission, contending that the disposition of this case turns on a conclusion as to the "particular tax or taxes that may be deemed a 'special' or 'county tax' for purposes of [Ala. Code 1975, §§ 11-14-10 to -17]," sought certiorari review of the validity of its sales tax. We granted certiorari review in order to determine the proper construction of those sections.
It is well settled in this state that the power to tax does not inhere in county governmental bodies. Jefferson County v.City of Birmingham, 248 Ala. 319, 325, 27 So.2d 584, 589
(1946); State v. Street, 117 Ala. 203, 23 So. 807 (1898);Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627 (1897). Consequently, authority for the imposition of county taxes must proceed from an express legislative grant. Newton v. City ofTuscaloosa, 251 Ala. 209, 36 So.2d 487 (1948); State ex rel.Chilton County v. Butler, 225 Ala. 191, 142 So. 531 (1932). One author describes the sources of county taxation authority as follows:
 "Alabama counties obtain the authority to raise revenue and to distribute it to the various county functions in two basic forms: (1) general authorities found in the Constitution and general laws that apply to all counties, and (2) local legislation that may modify general laws or, more frequently, allow the county covered by the act to obtain revenue from other sources."
T. Dickson, Jr., Trends in Legal Authority to Raise Revenue —Alabama Counties 2 (1977); see also Alabama Law Institute,Handbook for Alabama County Commissioners 82-83 (1989 6th ed.).
The Commission concedes that its sales tax was not passed pursuant to any local legislation or special enabling act. However, it contends that Ala. Code 1975, § 11-14-14 constitutes a general legislative grant of taxation authority for the limited purpose of building or repairing a jail. Section11-14-14 provides: "It is the duty of the county commission, if there is not a sufficient jail in its county, to levy a countytax for the erection thereof and cause *Page 987 
proposals to be issued for building or repairing the same within 12 months thereafter." (Emphasis added.) Consequently, it insists that it needs no special legislation or enabling act in order to authorize the tax.
In support of its argument that § 11-14-14 provides general authority for the levy of a sales tax, the Commission asserts that § 11-14-14 stands in contrast to §§ 11-14-10, -11, -16, and -17, which specifically authorize the assessment of a "special tax." Sections 11-14-10, -11, -16, and -17 provide as follows:
 "[§ 11-14-10]. The county commission shall erect courthouses, jails and hospitals and other necessary county buildings, and such county commission shall have authority to levy a special tax for that purpose. Each county within the state shall be required to maintain a jail within their county."
 "[§ 11-14-11]. The county commission may levy and collect such special taxes as it may deem necessary, not to exceed one fourth of one percent per annum, for the purpose of paying any debt or liability against any county incurred for the erection, construction or maintenance of the necessary bridges or public buildings prior to March 23, 1915, or incurred for the erection of public roads since November 28, 1901, or that may be created for the erection, repairing, furnishing or maintenance of public buildings, bridges or roads after March 23, 1915.
 "The proceeds of special taxes authorized by section 215 of the Constitution, as amended, and levied for public building, road or bridge purposes in excess of amounts payable on bonds, warrants or other securities issued by the county may be spent for general county purposes in such manner as the county commission may determine."
 "[§ 11-14-16]. Whenever it shall be deemed necessary by the county commission of any county in this state to pay any debt or liability now existing against any county incurred for the erection, construction or maintenance of the necessary buildings or bridges or that may hereafter be created for the erection of necessary public buildings, bridges or roads, such court shall have the power and authority to levy and collect a special tax upon the taxable property of such county, not to exceed in one year one fourth of one percent for such purposes; and such tax, when collected, shall be applied exclusively for the purposes for which the same was so levied and collected."
 "[§ 11-14-17]. In all cases in which the county commission is directed or empowered to levy a special tax for county purposes, such levy shall be made by the county commission itself upon the assessment last made for state taxes."
Id. (emphasis added).
Sections 11-14-10, -11, -14, -16, and -17 all refer expressly to the means of financing county buildings, of which county jails are a subspecies; therefore, those sections must be "construed together to ascertain the meaning and intent of each." Locke v. Wheat, 350 So.2d 451, 453 (Ala. 1977) ("Sections of the code dealing with the same subject matter are in parimateria"); see also Kelly v. State, 273 Ala. 240, 139 So.2d 326
(1962).
All parties agree that the special taxes authorized in §§11-14-10, -11, -16, and -17 for the building and repair of public buildings refer to ad valorem taxes on the value of property in the county. Reply Brief of Petitioners, at 3. They are, therefore, subject to the restrictions of Ala. Const. § 215, which prohibits the legislature from authorizing an assessment of county taxes in excess of 7 1/2 mills for the purposes authorized in §§ 11-14-10, -11, -16, and -17.[3] *Page 988 
The Commission contends, however, that the "county tax" authorized in § 11-14-14 is not the "special tax" authorized by §§ 11-14-10, -11, -16, and -17. Thus, the Commission argues, in effect, that the "special" taxes authorized in §§ 11-14-10, -11, -16, and -17 constitute a species of tax separate and distinct from the "county" tax for which § 11-14-14 provides. Therefore, it insists, the taxation authority granted to counties by the legislature in § 11-14-14 as a county tax is not confined to ad valorem taxes and the consequent restrictions imposed by § 215 of the Constitution. We disagree.
Whether a tax is general or special depends on the purpose for which it is levied or assessed. Special taxes are those that are imposed for a "special purpose" or which are "impose[d] in addition to the general levy." 71 Am.Jur.2dState and Local Taxation § 21 (1973). Thus, in McDaniel v.State, 31 Ala. 390 (1858), we explained:
 "All assessments of taxes by the court of county commissioners, under section 704 (subdivision 2) of the Code [1852], are county taxes, whether levied for general or particular purposes. The special tax for the purpose of erecting a courthouse and jail, authorized by [the predecessor of § 11-14-10], is but a special county tax. Each of these species of taxes is embraced under the generic term, county taxes."
Id. at 391 (emphasis added). A tax for the special county purpose of erecting a jail is merely a special county tax. As such, it falls squarely within the ambit of §§ 11-14-10, -11, -16, and -17.
Viewing these sections in this light, we conclude that in the absence of local or special enabling legislation, counties are restricted by § 215 of the Constitution and by §§ 11-14-10, -11, 16, and -17 to the imposition of ad valorem taxes for the special county purpose described in § 11-14-14. Section11-14-17, which authorizes only ad valorem taxes "in all cases in which the . . . commission is . . . empowered to levy a special tax for county purposes," should, therefore, be read as defining the perimeters of the taxation authority conferred in § 11-14-14. Any other construction of these sections allows §11-14-14 to sweep too broadly.
Statutes in pari materia must be "resolved in favor of each other to form one harmonious plan and give uniformity to the law." League of Women Voters v. Renfro, 292 Ala. 128, 131,290 So.2d 167, 169 (1974). Sections so related should be construed so as to accord to each a "field of operation." B.F. GoodrichCo. v. Butler, 56 Ala. App. 635, 647, 324 So.2d 776, 787
(Civ. App. 1975), cert. quashed, 295 Ala. 401, 324 So.2d 788
(1976). In this case, if § 11-14-14 constituted such a general grant of power as that proposed by the Commission, a county could conceivably levy virtually any kind of tax, other than advalorem taxes, at any rate, for the purpose described in the section. Such a result is inconsistent with the limited grant of authority for county jail financing expressed in §§11-14-10, -11, -16, and -17. The legislature could not have intended such a result.
This conclusion is also consistent with the principlegeneralibus specialia derogant, that is, that where sections inpari materia are general and specific, the more specific controls the more general. See Ivey v. Railway Fuel Co.,218 Ala. 407, *Page 989 118 So. 583 (1928). While § 11-14-14 sets forth in general terms the duty of county commissioners to provide suitable jail facilities, §§ 11-14-11, -16, and -17 specify the amount of the tax and the source from which it may derive. It follows, therefore, that the broad description of the Commission's duty in § 11-14-14 is further refined by the specific directions and limitations imposed in §§ 11-14-16 and -17. In short, the Commission has cited no authority or precedent for such power and our independent research in that respect has proven equally unfruitful.
In this connection, we note that the legislature, following the proposal and subsequent ratification of Ala. Const. amends. 442 and 444, enacted Act No. 84-30, 1984 Ala. Acts 33. That act authorized Randolph County to levy a "privilege or license tax . . . in the amount to be determined by the application of rates against gross sales or gross receipts . . . upon every person, firm or corporation . . . engaged . . . in the business of selling at retail any tangible personal property." The tax was authorized for the construction and financing of facilities for a courthouse and for the "housing, confinement, detention, . . . and training of persons held in . . . custody." If §11-14-14 authorizes Coffee County to do unilaterally what Randolph County essentially accomplished only after extensive legislation, it may well be said that the actions taken by the Alabama legislature on behalf of Randolph County involved an injudicious use of its resources. We have concluded, however, that this is not the case.
The Commission does not, in fact, contend that it has reached the statutory limit on ad valorem taxes or that it will be unable to finance the new jail without resort to the sales tax. It does argue, however, that in the event existing tax resources, as augmented by the recent increases in court costs and fines, are insufficient, it may incur criminal liability under § 11-14-15 for failure to furnish adequate jail facilities. Section 11-14-15 provides:
 "If any county commission fails to levy a tax to erect or repair a county jail when necessary, the persons composing such county commission are severally guilty of a misdemeanor and must, on conviction, be fined not less than $50.00, but any member thereof may exonerate himself from such fine by proving that he was in favor of levying a tax sufficient for the erection or repair of the county jail, but was overruled by his colleagues."
Id. The Commission thus contends that if the mechanisms now in place fail to supply the needed revenue, it could find itself "statutorily trapped with absolutely no means or route of escape" from criminal liability.
The Commission cites no authority in support of such a proposition, and our research has likewise produced none. On the contrary, in McDaniel v. State, 31 Ala. 390 (1858), this Court reversed convictions of the Cherokee County commissioners under Ala. Code 1852, § 771, the predecessor of § 11-14-15. In that case, the commissioners found themselves "statutorily trapped" between § 771 and Act No. 104, 1854 Ala. Acts, which placed a limit on the amount of taxes that might be assessed by a county for "general or particular purposes." This Court held that where the statutory limit is "insufficient to pay for the erection of a county jail, it follows, that the . . . county commissioners . . . are not liable to the penalties prescribed by section 771." McDaniel, 31 Ala. at 391.
We have carefully considered all the arguments and contentions of the Commission, and we find no error in the judgment of the Court of Civil Appeals. For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
INGRAM, J., recused.
[1] Following the decision of the Commission to impose the sales tax, the defendants named in the prisoners' class action suit consented to judgment. After the judgment of the trial court, which invalidated the ordinance imposing the sales tax, the consent judgment was withdrawn.
[2] While the appeal was pending, the Alabama Legislature approved legislation authorizing Coffee County to submit for a referendum an increase in court costs and fines in specified cases to augment funding for the jail construction. Act No. 90-435, 1990 Ala. Acts. On July 5, 1990, the proposed increases were approved by the voters of Coffee County.
[3] Section 215 of the Constitution, as amended by Amendment 208, provides:
 "No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one-half of one percentum; provided, that to pay debts existing on the sixth day of December, eighteen hundred and seventy-five, an additional rate of one-fourth of one per centum may be levied and collected which shall be appropriated exclusively to the payment of such debts and the interest thereon; provided, further, that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges, or roads (a) any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law. . . ."
Id.; see also Alabama Law Institute, Handbook for AlabamaCounty Commissioners 77 (6th ed. 1989). *Page 990