WELCH, Judge,
concurring in the result.
I write to expand on the discussion in the unpublished memorandum affirming the conviction of Willie Edward Williams regarding whether the State presented sufficient evidence to sustain a conviction as to each count alleged against Williams.
The indictment charged Williams with 19 counts, two of which (Counts VIII and XVIII) were severed from the trial of this case because of the unavailability of the victim. Of the remaining 17 counts, nine involved the burglary[1] of nine homes and eight counts involved the theft of property from eight of those nine homes.
“ ‘In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). *1095 The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Crim.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.’
“Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
“ ‘ “In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.” Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).’
[[Image here]]
“ ‘ “ ‘The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches ‘a clear conclusion that the finding and judgment are wrong.’ Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962) .... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). ‘[Wjhere there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.’ Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (I960).” Granger [v. State ], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].
“... ‘ “Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.” White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). “Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Crim.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).’
“White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989). “Also,
“ ‘ “[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Crim.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence *1096 excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).”
‘“Ward [v. State], 610 So.2d [1190] at 1191-92 [ (Ala.Crim.App.1992) ].’
“Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997).”
Connell v. State, 7 So.3d 1068, 1087-88 (Ala.Crim.App.2008).
Burglary is defined as entering or remaining unlawfully in a building with the intent to commit a crime therein, in this case, theft. § 13A-7-7, Ala.Code 1975.
Count I, first-degree burglary (because a firearm was taken during the course of the burglary, see § 13A-7-5, Ala.Code 1975), and Count XII, theft, involve the offenses committed at Christopher Paschal’s home. Paschal testified that a handgun was taken during the burglary. A review of the record shows that Paschal was the only witness who was able to identify Williams. Paschal testified that he came home and spoke with a neighbor across the street. While he was outside, he said, he heard the back door to his house slam. Paschal went inside and found that the inside of his house was in disarray. He looked out the window and saw Williams, who he recognized, and another “kid” running from his house. (R. 224.) The “kid” was carrying a duffel bag.
Paschal also testified that the words “catch me if you can detec — ■” had been written on a door at his house. (R. 213.)
This evidence placed Williams at Paschal’s house at the time of the burglary and established that certain items, including a handgun, were taken from the house. The evidence was sufficient to sustain a conviction as to Counts I and XII.
Counts II and XVII involve the offenses that occurred at the home of Linda Kent. Ms. Kent testified that a DVD player, a camcorder, a digital camera, a PlayStation 1 and PlayStation 2, and a number of games to be played on the PlayStations had been stolen. She also identified a game case and game controller recovered from Williams’s house as being the same or similar to the ones taken from her home.
Two of Ms. Kent’s neighbors testified that they saw two men at Kent’s house. One neighbor said that she saw two men with bags jump the fence, but she could not identify the men.
Another neighbor testified that her house was behind Kent’s house. She saw a light gray metallic colored car driving slowly down the alley between the two houses. As the neighbor watched, two men got into the car. One of the men was carrying a duffel bag. The neighbor was able to take down at least part of the number on the car’s license plate.
Both of Kent’s neighbors reported the incident to police. When the police traced the partial license plate number, they were able to match the number to a Honda Accord automobile that was registered to Williams’s wife.
Count III involved the burglary of the home of Helen Davenport. Mrs. Davenport had suffered a stroke and was in the hospital at the time of the burglary. Her son, Gary, testified that one of his mother’s neighbors called him to tell him of the burglary. Gary Davenport went to the house and found that the back door had been kicked in and the house ransacked. Police showed him a note that had been discovered on the kitchen counter. The note, which read “Detective Payson, fuck you bitch,” (R. 82) was “probably authored” by Williams, according to Steven *1097 Drexler, a handwriting expert who testified at the trial. (R. 302.)
Counts IV and XVI involved the offenses that occurred at the home of Rita Elrod. Ms. Elrod testified that several pieces of jewelry had been taken from her home. She found the words “Catch me if you can Detective Payson,” written on her closet door. (R. 195.) Drexler testified that there were “indications” that Williams had written the words. (R. 305-06.)
Counts V and XIV involved offenses committed at the home of Kenya Williams. Kenya Williams testified that his house had been broken into and a DVD player taken. He found a note on his dresser and another message written on a wall. Drex-ler could not say one way or another whether Williams wrote the note regarding Kenya Williams’s wife and daughter; however, he was able to say that Williams probably wrote the note taunting Detective Payson.
Counts VI and XV involved the offenses committed at the home of Early Hooper. Hooper testified that his home had been broken into and that a camera, watches and jewelry had been stolen. Like other victims, Hooper found a message written on his wall saying “Catch me if you can.” (R. 177.)
Counts VII and XIX involved the offenses committed at the home of Paul Hib-bard. Hibbard testified that he returned home from work to find the back door to his home had been kicked in and that his house had been ransacked. A camcorder, digital camera, a drill, jewelry, and a PlayStation with about 60 games had been taken. One of the games could not be played effectively without a certain controller — a light gun — and the light gun had not been taken.
Hibbard identified games recovered from Williams’s house as being similar to the games stolen from his house. He acknowledged that the games could be purchased on the Internet or at local stores, but he noted that one of the games found at Williams’s house was the game that could not be operated effectively without the light gun. No light gun was found at Williams’s house.
One of Hibbard’s neighbors testified that he saw a man running toward the back of Hibbard’s house. About 15 minutes later, the neighbor said, he saw two black men carrying suitcases running back toward the street. The men got into a “silvery light metallic” colored Honda or Toyota. (R. 151.) That description matched the description of the car Ms. Kent’s neighbor saw driving in the alley between her house and Ms. Kent’s house when Ms. Kent’s house was robbed. A neighbor saw two men get into that car and at least one was carrying a duffel bag.
Counts IX and XIII involved offenses committed at Shirley Keesee’s home. Ms. Keesee testified that she returned home from work and discovered the front door to her house had been kicked in and her house had been ransacked. Like other victims, Ms. Keesee discovered a message written on the wall over the mantel. Drexler testified that there were “strong indications” that Williams wrote the message. (R. 308.)
Counts X and XI involved the offenses committed at the home of June Robbins. Robbins testified that she returned home from work to find her home had been broken into and ransacked. Coins, a camera, and a video camera had been stolen. Like other victims, Robbins testified that she found a note taunting Detective Pay-son.
The burglary of Paschal’s home, when Paschal was able to identify Williams as one of the people he saw running from his home, is the only burglary with evidence to *1098 directly tie Williams to the offenses. The State used circumstantial evidence to tie him to the other burglaries.
On a door inside his house, Paschal discovered a partial message — it appears that the writer was abruptly cut off. The message was similar in tone to the messages found in the houses of Davenport, Elrod, Kenya Williams, Hooper, Keesee and Robbins. Drexler, the handwriting expert, made a comparison of the notes found at the burglary scenes and handwriting samples that were known to be written by Williams and was able to conclude that least some of the notes were probably written by Williams.
Based upon Paschal’s identification of Williams and the message discovered in Paschal’s house, coupled with the similarity of notes taunting Detective Payson discovered in six of the other homes alleged to have been burglarized by Williams, and Drexler’s testimony that Williams probably wrote the notes and messages discovered in those homes, I believe that there is sufficient evidence from which a jury could reasonably find that Williams committed the burglaries of the homes of Paschal, Davenport, Elrod, Kenya Williams, Hooper, Keesee and Robbins.
The record does not indicate that notes or messages were found at the homes of Kent or Hibbard. Nonetheless, the State presented other evidence that, viewed in the light most favorable to the State, tended to connect Williams with the burglaries of those homes. Neighbors of both Kent and Hibbard saw the alleged robbers close to the victims’ homes at the times the robberies took place. Both also saw the robbers get into light metallic-colored vehicle, which was identified as a Honda Accord by one witness and as a Honda or a Toyota by another. Police traced the license plate number of the car, which was provided to them by Kent’s neighbor, and discovered that it was registered to Williams’s wife. Items matching items stolen from Kent and Hibbard’s homes were discovered in Williams’s home. One of the games taken from Hibbard’s home can only be played effectively with a light gun, and no light gun was found at Williams’s residence. It is unlikely that someone would purchase a game if he did not have the equipment to play it.
Again, in viewing the evidence presented in a light most favorable to the State, I believe that the State presented sufficient evidence from which a jury could find Williams guilty of the burglaries and thefts at the homes of Kent and Hibbard.
I also point out that I disagree with the analysis in Part I of the unpublished memorandum that, because Williams failed to cite authority other than a single rule of evidence in support of his contention that Detective Payson was improperly allowed to testify as to the recovery of the gun taken from Paschal’s home, the issue was waived pursuant to Rule 28(a)(10), Ala. R.App. P. In independently researching the issue, I was unable to find caselaw discussing the issue of whether a document kept by the Montgomery Police Department recording matters observed by police is inadmissible against a criminal defendant pursuant to Rule 803(8), Ala. R. Evict, the rule cited by Williams. Because no cases have yet been published on the issue, it is not fair to penalize Williams for his “failure” to cite caselaw that does not yet exist.
That being said, Williams is nonetheless not entitled to relief as to this issue. Williams contends that, pursuant to Rule 803(8), the documents that Detective Pay-son said he read regarding the recovery of Mr. Paschal’s gun were inadmissible. However, the record shows that the State did not attempt to introduce those records.
*1099 Instead, the prosecution elicited testimony from Payson that he learned about the gun’s recovery from other officers and from reviewing the reports generated in another case. Therefore, the appropriate argument would have been that Payson’s testimony was improper hearsay testimony. Williams’s attempt to argue that Pay-son’s testimony should not have been allowed pursuant to Rule 803(8), Ala. R. Evid., was misplaced.

. Eight of the counts alleged burglary in the third degree, the ninth alleged burglary in the first degree.