MAIN, Judge.
 

 Andrevis Deon Davis was indicted for first-degree kidnapping by three separate indictments, each naming a different victim and each containing two counts; for attempted murder by two indictments, each naming a different victim; and for first-degree robbery of one victim. He was convicted of six counts of first-degree kidnapping, two counts of attempted murder, and one count of first-degree robbery. Davis was sentenced to 99 years in the penitentiary on each conviction, with the sentences to run consecutively.
 

 I.
 

 Davis argues that the evidence presented by the State was insufficient to support his convictions and that, therefore,
 
 *164
 
 the trial court should have granted his motion for a judgment of acquittal. Davis bases his argument on his claim that no witness was able to see his face and thereby to connect him to the crimes. He also argues that, as to the kidnapping convictions, there was no testimony from the victims that they were hostages or that they were used as shields, so that, he says, the State failed to prove a prima facie case of first-degree kidnapping.
 

 “In
 
 Johnson v. State,
 
 555 So.2d 818, 819-20 (Ala.Cr.App.1989), this court noted the difference in ‘sufficiency’ and Veight’ as follows:
 

 ‘“The
 
 weight
 
 of the evidence is clearly a different matter from the
 
 sufficiency
 
 of the evidence. The
 
 sufficiency
 
 of the evidence concerns the question of whether, “viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt.”
 
 Tibbs v. Florida,
 
 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord,
 
 Prantl v. State,
 
 462 So.2d 781, 784 (Ala.Cr.App.1984).
 

 [[Image here]]
 

 “ ‘In contrast, “[t]he
 
 ‘weight
 
 of the evidence’ refers to ‘a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.’ ”
 
 Tibbs v. Florida,
 
 457 U.S. at 87-38 [102 S.Ct. at 2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.
 
 E.g., Franklin v. State,
 
 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981);
 
 Crumpton v. State,
 
 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981);
 
 Nobis v. State,
 
 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). ‘“[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ”
 
 Harris v. State,
 
 513 So.2d 79, 81 (Ala.Cr.App.1987) (quoting
 
 Byrd v. State,
 
 24 Ala.App. 451, 136 So. 431 (1931)).[’]
 

 “(Emphasis in original.)
 
 See Smith v. State,
 
 604 So.2d 434 (Ala.Cr.App.1992);
 
 Pearson v. State,
 
 601 So.2d 1119 (Ala.Cr.App.1992);
 
 Curry v. State,
 
 601 So.2d 157 (Ala.Cr.App.1992).”
 

 Zumbado v. State,
 
 615 So.2d 1223, 1240-41 (Ala.Crim.App.1993).
 

 “In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution.
 
 Cumbo v. State,
 
 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case.
 
 Gunn v. State,
 
 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty.
 
 Thomas v. State,
 
 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt.
 
 Willis v. State,
 
 447 So.2d 199 (Ala.Cr.App.1983);
 
 Thomas v. State.
 
 When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of ac
 
 *165
 
 quittal by the trial court does not constitute error.
 
 Young v. State,
 
 288 Ala. 676, 220 So.2d 843 (1969);
 
 Willis v. State:’
 

 Breckenridge v. State,
 
 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
 

 “ ‘ “The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is
 
 legally
 
 sufficient to allow submission of an issue for decision to the jury.”
 
 Ex parte Bankston,
 
 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.”
 
 Kelly v. State,
 
 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal.
 
 Roberson v. State,
 
 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.”
 
 Fuller v. State,
 
 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied,
 
 Fuller v. Alabama,
 
 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’
 
 Granger [v. State],
 
 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].”
 

 White v. State,
 
 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
 

 In the present case, Amanda Ward testified that she was working the late shift at the Hobo Pantry convenience store on the day of the offense; that at approximately 12:20 a.m. a black man wearing a white long sleeved shirt and jeans with a “white cover on over his face” entered the store with a revolver in his hand. (R. 39); that she was standing behind the counter and he pointed the gun at her face; and that she could see his eyes. Ward also testified that the man demanded money, ordered her to open the cash register, and told her to put the money in a white bag he had with him; and that he then ordered her to open the safe but she was unable to do so despite a number of attempts, because of her fear. She further testified that a buzzer indicated that someone was entering the store, and the man instructed her “to get down and crawl behind the counter” (R. 50); that a white male entered the store and the man ordered him to the ground and instructed the customer to crawl behind the counter; and that the man with the gun also got down behind the counter and prevented them from leaving. (R. 51.) Ward stated that she again heard the buzzer, and a black male entered the store and was then ordered down behind the counter by the man with the gun; that she and the two customers behind the counter were “blocked in by [the robber] who had the gun.” (R. 65.) According to Ward, she was still attempting to open the safe when she heard the buzzer a third time. She testified that she watched as the man with the gun “creeped” from behind the short swinging doors located by the counter and began shooting; that the man fired four or five shots and she heard shots being returned; and that during the exchange the man was shot and asked for help. Police officers had arrived and it was the officers who had returned fire when the man with the gun started shooting. Ward stated that officers routinely stopped by the store to check on her. She identified Davis at trial as the man who had robbed and kidnapped her.
 

 Robert Mallory, the first customer to enter the store after the robbery commenced, described the robber as dressed in a shirt and jeans with a white towel wrapped around his head. He testified that he was ordered at gunpoint to crawl behind the counter and was prevented from leaving; that Ward gave the robber the money from the cash register; that upon hearing the buzzer, the robber
 
 *166
 
 pushed him against the counter and told him to move up; that the robber then “scoot[ed] down and stood up,” whereupon he heard gunshots. (R. 84.) According to Mallory, the robber was shot during the exchange and stated that he could not breathe and asked for help. Mallory identified Davis as the man who robbed the clerk and kidnapped him.
 

 The second customer who entered the store during the robbery, Jeremy Calhoun, testified that he could not see the robber’s face because it was covered with a white t-shirt; that the robber’s eyes were exposed; that the robber asked about a tape from the security camera and went into the office of the store. Calhoun stated that he did not try to escape because the robber was armed with the gun. Calhoun testified that he had informed the prosecutor that while he was close to the robber behind the counter, the item that was covering the robber’s face “came off’ and he was able to see the side of his face. (R. 114.)
 

 Corporal Arthur Shaffer and Officer Walter Handley of the Dothan Police Department testified at trial that they stopped at the Hobo Pantry on the night of the offenses to check on the attendant because there had been a number of robberies around Dothan and that the Hobo Pantry had “a tendency to be robbed.” (R. 121, 157.) The officers’ testimony indicated that after they entered the store, they saw a black male “pop up” from behind the counter (R. 125); that the black male fired at the officers and Corporal Shaffer returned fire; and that Corporal Shaffer was shot in the head. Corporal Shaffer stated that the bullet originally hit the safety lens of his eyeglasses, deflected off the glasses, entered the side of his face “where the eyeglass bar is,” shattered his upper jaw, “blew out” his right ear canal, and “blew out” the back of his right ear (R. 165-66) and that he suffers partial paralysis on the right side of his face as a result of a severed nerve from the gunshot wound. The testimony indicated that Officer Handley was hit by two bullets, one in the right arm and one in the right side, and that he suffered a cracked rib even though he was wearing a bulletproof vest. The testimony further indicated that Corporal Shaffer quit firing his weapon when he heard Ward scream and realized that she was behind the counter, at which time Corporal Shaffer crawled out of the store to take cover and to call for help. Officer Handley stated that the shooter had on a white t-shirt and had a white towel or t-shirt wrapped around his head, but that his eyes and nose were visible. Corporal Shaffer stated that the shooter wore a white t-shirt and jeans and had a white t-shirt wrapped around his head. At trial, both officers identified Davis as the shooter at trial.
 

 A.
 

 Davis argues that the State did not present sufficient evidence identifying him as the perpetrator. In his brief to this Court, Davis argues that none of the witnesses testified that they saw his face during the commission of the offenses; that three of the witnesses were not at the store during the commission of the offenses; that three of the witnesses who were at the store testified that the perpetrator’s face was concealed; that the two officers shot during the incident testified that the gunman’s face was concealed and neither officer testified as to seeing the gunman being brought out of the building; and that nobody testified that Davis was the man transported from the scene to the hospital or even that any suspect was transported to the hospital.
 

 Initially, we question whether the specific claims asserted on appeal were preserved for our review.
 

 
 *167
 
 Davis argued in his motion for a judgment of acquittal as follows:
 

 “I have a motion. Judge. Judge, in regards to Case No. 08-749, which was the kidnapping in the first degree, and the alleged victim in that case is Mr. [Robert] Mallory, I move for judgment of acquittal.
 

 “There was no evidence from anyone that my client regarding count one used Mr. Mallory as a shield or hostage in the incident that happened in March. There was no evidence, Judge, that regarding count two that Mr. Mallory was in any way used to aid my client in the alleged robbery that took place on that date.
 

 “In regards to CC-08-750, kidnapping in the first degree where the victim was Mr. Jeremy Calhoun, in that case, Judge, I would state the same objections, the same reasons to move to acquit as I stated in case CC-08-749.
 

 “In addition to that, Judge, Mr. Calhoun did not or could not identify my client as the individual that, in fact, was there that day.
 

 “Judge in regards to Case Number CC-08-751 in which the alleged victim in that case was Ms. Amanda Ward, I would again state the reasons that I stated in Case Number CC-08-749 and -750 in regarding count one and count two of that indictment.
 

 “In regards, Judge, to Case Number CC-08-752, attempted murder of Officer Handley, I would move for judgment of acquittal, there was no evidence that— there was no statement that Mr. Davis intended to kill Officer Handley.
 

 “In Case CC-08-753, Judge, in the attempted murder in which the alleged victim in that case was Corporal Shaffer, I would move for judgment of acquittal in that case, Your Honor, for the reason again there was no evidence, no statement, that my client intended to kill or slay Officer Shaffer.
 

 “And then, finally, Judge, in regards to CC-08-754, which is the robbery, I would move for judgment of acquittal on the basis there was no statements as to the amount, if any, of monies that were taken in that case.”
 

 (R. 202-03.)
 

 It is well settled that
 

 “[t]he issue of the sufficiency of the evidence is preserved for review by a defendant’s motion for a judgment of acquittal that is entered at the end of the state’s case, at the close of the evidence, see [Ala.R.Crim.P.] 20.2(a), or after the verdict is entered, see [Ala. R.Crim.P.] 20.3. The motion must state the ground that the state failed to prove a prima facie case [or similar language]. See, e.g.,
 
 Ex parte Maxwell,
 
 439 So.2d 715 (Ala.1983). A defendant may also challenge the sufficiency of the evidence when moving for a new trial under [Ala.Crim.P.] 24.1 or when moving for an arrest of judgment under [Ala.R.Crim.P.] 24.2. [Ala.R.Crim.P.] 20.3(c); see
 
 Pearson [v. State],
 
 601 So.2d [1119,] 1123-24 [ (Ala.Crim.App.1992) ];
 
 Prather v. City of Hoover,
 
 585 So.2d 257, 258 n. 1 (Ala.Cr.App.1991).”
 

 Zumbado v. State,
 
 615 So.2d at 1241. Further,
 

 “[t]he sufficiency of the evidence is subject to appellate review only where the defendant challenges the State’s lack of evidence by either a motion to exclude, a motion for judgment of acquittal, or a motion for new trial.
 
 Slaughter v. Slate,
 
 424 So.2d 1365 (Ala.Cr.App.1982); see
 
 Johnson v. State,
 
 500 So.2d 69 (Ala.Cr.App.1986). The appellant is bound by the specific objections that he made at trial and cannot raise a new ground on appeal.
 
 Bolding v. State,
 
 428 So.2d 187 (Ala.Cr.App.1983).”
 

 
 *168
 

 Washington v. State,
 
 555 So.2d 347, 348 (Ala.Crim.App.1989). “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.”
 
 Ex parte Frith,
 
 526 So.2d 880, 882 (Ala.1987).
 

 Davis did
 
 not
 
 assert
 
 in his
 
 motion for a judgment of acquittal that the State failed to present a prima facie case. Rather, he raised specific challenges to specific aspects of the State’s evidence: with regard to the robbery charge, Davis challenged only the lack of testimony regarding whether any money was actually taken during the offense; with regard to the two attempted-murder charges, Davis challenged only the State’s evidence of his intent to kill the officers; and with regard to the kidnapping charge involving Mallory, Davis argued only that there was no evidence indicating that he used the victim as a shield or hostage or to accomplish or aid in the robbery. Thus, with regard to those charges, Davis did not preserve for appellate review the specific challenge to the State’s alleged failure to present evidence of his identity. With regard to the kidnapping charges involving Calhoun, Davis’s arguments in his motion for a judgment of acquittal did challenge the State’s evidence of his identity. Similarly, with regard to the kidnapping charge involving Ward, because Davis indicated that he was raising the same grounds asserted in the kidnapping charges involving the other two victims, Davis arguably challenged the State’s evidence of identity as to victim Ward.
 

 However, even assuming, without deciding, that Davis’s challenge to the alleged lack of evidence identifying him as the perpetrator was preserved as to all the charges, we conclude that Davis is not entitled to any relief. The record shows that Ward, Mallory, Corporal Shaffer, and .Officer Handley all positively identified Davis at trial as the perpetrator. Although Calhoun originally testified that he could not see the perpetrator, he later stated that he had told the prosecutor that he had been able to see the side of the perpetrator’s face at one point when the towel or t-shirt covering the perpetrator’s head had shifted. The State’s evidence further indicated that Davis, although not specifying exactly what actions he took in the store, conceded to authorities that he had been in the store at the time and that he “did what he did.” (R. 199.) Thus, the State presented legally sufficient evidence indicating that Davis was the perpetrator for the trial court to overrule his motion for a judgment of acquittal and to submit the charges to the jury.
 
 [1]
 

 B.
 

 Davis also argues that there was no evidence from the victims of the kidnapping, who testified at trial, indicating that he used any of them as a shield or a hostage or to effect his escape from the scene. First-degree kidnapping requires an abduction coupled with one of six enumerated “goals of criminal intent,”
 
 Smith v. State,
 
 838 So.2d 413, 468-69 (Ala.Crim.App.2002); here, the challenged grounds are to use the victim as a shield or hostage,
 
 see
 
 § 13A-6-43(a), Ala.Code 1975, or to “[ajccomplish or aid the commission of any felony or flight therefrom,”
 
 see
 
 § 13A-6-43(a)(3), Ala.Code 1975. The Commentary to § 13A-6-43 notes that the abductor’s intent to use his victim as a shield or hostage is “life-endangering” and that the purpose need not “be actually accom
 
 *169
 
 plished in order for the crime of kidnapping to be committed.” “[T]he crime is complete when there is an ‘abduction,’ i.e., intentional or knowing restraint, coupled with an intent to secrete or to hold the victim where he is not likely to be found, or use, or threaten to use, deadly physical force. Section 13A-6-40(l) and (2).”
 
 Id.
 

 In this case, Davis ordered his victims to get down behind the counter where he was also hiding. He clearly threatened them with deadly physical force by pointing a gun at them. They all perceived that they were being prevented from leaving; there is no requirement in the statute that a kidnapping victim perceive or be informed of the exact purpose of his or her abduction. The jury could have reasonably believed that Davis’s purpose in keeping the victims hidden with him behind the counter was to use them as shields in case of gunfire or as hostages if necessary.
 
 Miller v. State,
 
 645 So.2d 363, 367-68 (Ala.Crim.App.1994);
 
 Rowe v. State,
 
 662 So.2d 1227, 1229-30 (Ala.Crim.App.1995). Therefore, the State presented sufficient evidence to prove that Davis committed the offenses of first-degree kidnapping as to Ward, Mallory, and Calhoun. Any conflicts in the evidence were for the jury to resolve.
 

 II.
 

 Davis also argues that his right to be free from double jeopardy was violated by his having been convicted of six counts of kidnapping and having six sentences imposed when there were only three kidnapping victims. The State concedes that because Davis was convicted of multiple counts of committing the same offense by alternate means, this case is due to be remanded. We agree.
 

 Davis was charged, convicted, and sentenced for two counts of kidnapping as to each of the three victims, one for abducting them to use them as a shield or hostage,
 
 see
 
 § 13A-6-43(a)(2), Ala.Code 1975, and the other for abducting them to accomplish or aid in the commission of any felony or flight therefrom,
 
 see
 
 § 13A-6-43(a)(3), Ala.Code 1975. As previously noted, a kidnapping is complete when a victim is abducted with the intent to secrete the victim or deadly force is used or the perpetrator threatens to use such force. Commentary, § 13A-6-43, Ala. Code 1975. “The prime ingredient is the taking or detaining of a person against his will and without authority of law.”
 
 Id.
 

 Because multiple punishments were imposed under separate subsections of § 13A-6-43, Ala.Code 1975, “when the actions described in each of those subsections [were] based on the same conduct of the accused against the same victim,” double-jeopardy principles were violated.
 
 Egbuonu v. State,
 
 993 So.2d 35, 43 (Ala.Crim.App.2007).
 
 See also Ex parte Robey,
 
 920 So.2d 1069, 1070 (Ala.2004); and
 
 Ex parte Rice,
 
 766 So.2d 143, 148 (Ala.1999). For this reason, this cause must be remanded for the entry of a new order.
 
 See Rice,
 
 766 So.2d at 152-53 (“[A]n appellate court’s vacating one of [the defendant’s] convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury’s verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges [the defendant] guilty of [the victim’s] murder and sentences him for that single offense.”).
 

 Thus, we remand this case for the trial court to enter a new order adjudging Davis guilty of a single offense of first-degree kidnapping against victim Ward, a single offense of first-degree kidnapping against victim Mallory, and a single offense of first-degree kidnapping against victim Calhoun, and sentencing him for
 
 *170
 
 each of those three convictions. Due return shall be filed with this Court within 35 days of the date of this opinion.
 

 REMANDED WITH DIRECTIONS.
 

 WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.
 

 [1]
 

 . To the extent that Davis challenges matters pertaining to the weight of the evidence, those challenges were not preserved for appellate review and this Court will not invade the province of the jury and reweigh the evidence in this case.